* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Deluca with modifications.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pre-trial agreement as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee/employer relationship existed between the named employee and named employer at the times in question.
3. The carriers liable on the respective risks are correctly named above.
4. Plaintiff's average weekly wage is $600.00 per week for both claims pursuant to the stipulation of the parties.
5. Defendant Crum and Forster admits a compensable December 30, 2002 left knee injury, but denies any additional compensable consequences, and also denies the right knee injury.
6. Defendant Wausau denies plaintiff sustained an injury or contracted an occupational disease on or about July 12, 2004.
7. Medical records, Industrial Commission forms, discovery responses, job search records and employment documents have been stipulated into evidence with the Pre-Hearing Agreement.
8. After the deposition of Brenda Hefner, the parties stipulated plaintiff would testify that she has no recollection of hitting her knee a second time (which would have been during the coverage by Defendant Wausau, which began on December 31, 2002). The parties also stipulated a two-page fax from Ms. Hefner listing from Regal records the dates of coverage for the various carriers.
 * * * * * * * * * * * *Page 3 ISSUES
The following issues were presented at the hearing before the Deputy Commissioner:
1. Are plaintiff's current left knee/leg and right knee/leg conditions a result of the original compensable left knee injury;
2. Should treatment for knees be changed to Dr. Jerry Barron;
3. What is the compensability of plaintiff's hands and left elbow (both trauma and occupational disease); and
4. Is plaintiff entitled to temporary total compensation July 16, 2004, and continuing and which carrier is responsible.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on July 4, 1944, and graduated from high school. Plaintiff has arthritis and diabetes, and smokes a pack of cigarettes per day.
2. Plaintiff was employed by defendant-employer as a working supervisor for 16 years through July 16, 2004. That job involved repetitive use of the hands and arms. About sixty percent of the usual 9-hour workday was spent creeling, or doffing, which was removing/changing up to several thousand spools/packages of yarn per shift. Creeling/doffing also required extensive reaching with the arms to take packages down and replace packages that were at or above shoulder level as viewed from the relative body position of plaintiff. About ten percent of the work shift was spent as a machine operator, which required changing packages of yarn and also lots of tying. Another ten percent of the work shift was spent as a backwinder, *Page 4 
which also required tying of knots (6 — 10 knots/minute). The remaining twenty percent of the work shift was spent doing paper work.
3. Plaintiff sustained an admittedly compensable injury to her left knee on December 30, 2002, when she struck the inside of her left knee against the corner of a desk.
4. Plaintiff missed no work as a result of the December 30, 2002, left knee injury, continuing her employment with defendant-employer through July 16, 2004, when the plant closed.
5. Plaintiff has received medical treatment for her left knee, initially with Hart Industrial Clinic beginning on January 8, 2003. Plaintiff's initial diagnosis was left knee contusion. She continued to receive treatment at Hart Industrial Clinic for her left knee through August 5, 2003. On July 22, 2003, the Hart Industrial Clinic note indicates: "Patient reports she got better for a period of time." This is consistent with the testimony of Brenda Hefner, the former Human Resources Manager for defendant-employer.
6. On August 14, 2003, plaintiff was referred to Carolina Orthopedic Specialists where she was seen initially by Dr. Sladicka and later by Dr. Campbell. Both Dr. Sladicka and Dr. Campbell were unable to identify the etiology of plaintiff's ongoing knee pain. Both Dr. Sladicka and Dr. Campbell found no clinical evidence of a medial meniscal tear. Dr. Sladicka and Dr. Campbell restated these opinions in their depositions. Dr. Sladicka also testified that he did not believe plaintiff would have generated enough force to cause her torn meniscus in the incident of December 30, 2002. Dr. Campbell also thought this incident an unlikely mechanism for plaintiff's torn meniscus. Additionally, Dr. Campbell opined that there was no relationship between plaintiff's compensable left knee injury and her right knee pain. *Page 5 
7. Plaintiff also sought treatment at Hickory Orthopaedic Center with Dr. H. Grey Winfield. Dr. Winfield treated plaintiff from June 21, 2004 through July 7, 2004. The July 5, 2004 note by Dr. Winfield appears to be the first medical note referencing problems with the right knee. Dr. Winfield's note of that date indicates that plaintiff was having "arthritic symptoms in her right knee." On July 7, 2004, Dr. Winfield's note indicates plaintiff was "happy" with her left knee. In his deposition, Dr. Winfield testified that plaintiff's torn meniscus did not cause the pain for which he treated her. He also did not believe that plaintiff's right knee pain was related to her compensable injury.
8. On or about July 12, 2004, plaintiff accidentally banged her left elbow on the corner of a garment machine. Thereafter, plaintiff had some numbness in the tips of her left ring and small fingers. The Full Commission finds that the July 12, 2004 incident constitutes an injury by accident for purposes of the Workers' Compensation Act.
9. On July 13, 2004, plaintiff presented to Dr. Edwards of Hart Industrial Clinic. Medical records reflect that she reported that she did not have any direct trauma to the elbow or the hand, except for one episode of banging her elbow at work about 6 months earlier. On July 13, 2004, Dr. Edwards diagnosed plaintiff with left ulnar neuropathy and probable cubital tunnel syndrome, possibly stemming from a diabetic mononeuropathy. Plaintiff has not filed a claim for an injury by accident occurring in January 2004.
10. On July 13, 2004, plaintiff was released to regular duty work and continued working in a regular duty capacity up until the time the plant closed on July 16, 2004.
11. On August 10, 2004, plaintiff treated with Dr. Kirkland and was diagnosed with advanced left cubital tunnel syndrome. On that date, Dr. Kirkland opined that he is not aware of any specific medical studies that clearly indicate that cubital tunnel syndrome is due to any *Page 6 
specific activity at work. Dr. Kirkland also opined that he did not believe plaintiff's left cubital tunnel syndrome was related to her job duties.
12. Plaintiff was also seen Dr. Jerry L. Barron on September 27 and December 31, 2004. An MRI ordered by Dr. Barron was performed on November 17, 2004 and showed "posterior horn medial meniscal tear with displaced flap and adjacent chondromalacia." The MRI further indicated: "This may have been present but was not well seen on prior study," referencing a February 24, 2003 MRI that did not identify a meniscal tear or ligament injury. Dr. Barron recommended surgery to the left knee and an MRI of the right knee.
13. In his deposition, Dr. Massengill maintained his opinion that the meniscal tear that was clearly evident on the MRI of November 17, 2004, may have appeared on the prior MRI.
14. In his deposition, Dr. Barron opined that plaintiff's compensable injury of December 30, 2002, caused plaintiff's ongoing left knee pain and indirectly caused her right knee pain due to additional pressure on plaintiff's right knee. Dr. Barron testified that plaintiff's knee problems have restricted her from prolonged standing and she should be allowed to sit as needed. Dr. Barron's testimony corroborates the testimony of plaintiff, who testified that she felt the left knee injury was forcing her to place additional stress on her right knee.
15. On January 27, 2005, plaintiff returned to Dr. Sladicka reporting bilateral knee pain. Upon examination, Dr. Sladicka did not give any work restrictions at that visit. Regarding plaintiff's right knee pain, Dr. Sladicka testified that it is common for patients to develop problems with an uninjured leg from favoring the injured leg.
16. On October 12, 2005, plaintiff treated with Dr. McCloskey of Catawba Valley Neurosurgical and Spine Services. On that date, she was diagnosed with post-traumatic *Page 7 
ulnar nerve entrapment of the left elbow. In his deposition, Dr. McCloskey opined that plaintiff suffers from post-traumatic left ulnar nerve entrapment (left cubital tunnel syndrome). Although Dr. McCloskey believed that the July 12, 2004 was a causal factor in the development of plaintiff's cubital tunnel syndrome, and that plaintiff's job with defendant-employer put plaintiff at increased risk for this condition and was a substantial causal factor in the development of the condition, the Full Commission finds the opinions of Dr. McCloskey are not supported by the greater weight of the evidence of record.
17. As to whether plaintiff's July 12, 2004 incident, in which she accidentally banged her left elbow, was a causal factor in the development of her cubital tunnel syndrome, Dr. McCloskey was unable to state with medical certainty as to how much blunt trauma is required to develop neuropathy or entrapment such as cubital tunnel syndrome, or whether the July 12, 2004 incident could be considered a blunt trauma. Thus, even if the July 12, 2004, incident were to be considered an injury by accident, the medical evidence does not support that plaintiff's cubital tunnel syndrome is causally related.
18. As to whether plaintiff's cubital tunnel syndrome is an occupational disease, the evidence fails to show that plaintiff was placed at an increased risk of developing cubital tunnel syndrome and that there was a causal connection between her employment and the condition. Dr. McCloskey testified that cubital tunnel syndrome is a multi-factorial disease that can be caused by many things, and that there is not one particular cause to it. The greater weight of the evidence shows that plaintiff's diabetes, arthritis, and smoking habits increased her risk of developing cubital tunnel syndrome. Dr. McCloskey testified that these factors could indeed cause the neuropathy that led to plaintiff's cubital tunnel syndrome, and that diabetics are more prone to neuropathy in general. Further, Dr. Kirkland, plaintiff's treating physician since 1997 *Page 8 
was of the opinion that plaintiff's cubital tunnel syndrome was not related to her employment, and noted that he is not aware of any specific medical studies indicating that cubital tunnel syndrome is due to any specific work-related activities. Thus, plaintiff has failed to show that her cubital tunnel syndrome is a compensable occupational disease.
19. The Full Commission finds that, based upon the testimony of Dr. Barron, plaintiff's persistent left knee pain was causally related to her compensable injury of December 30, 2002. Additionally, based upon the testimony of Dr. Barron, the Full Commission finds that plaintiff's right knee pain developed as a natural consequence of plaintiff's left knee injury and is, thus, proximately related to the December 30, 2002 work-related incident. Although Dr. Winfield and Dr. Campbell both were of the opinion that plaintiff's right knee problems were not related to the compensable left knee injury, the Full Commission gives greater weight to the testimony of Dr. Barron. Dr. Barron's opinion that plaintiff's right knee pain is proximately related to the compensable left knee injury is supported by the testimony of Dr. Sladicka, who testified that it is common for patients to develop problems with an uninjured leg from favoring the injured leg. Moroever, Dr. Barron's opinion is supported by plaintiff's own testimony, in which she stated that she felt the left knee injury was forcing her to place additional stress on her right knee.
20. As of the date of hearing before the Deputy Commissioner, plaintiff continued to have pain in both knees and had difficulty standing more than 1.5 to 2 hours, or sitting more than 1.5 to 2 hours.
21. Plaintiff received $17,732.00 ($341.00 per week for 52 weeks) of unemployment insurance benefits following the plant closing on July 16, 2004. *Page 9 
22. Plaintiff has unsuccessfully sought employment at more than 100 places. The Full Commission finds that the plaintiff's efforts in seeking employment constitute a reasonable job search.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On December 30, 2002, plaintiff sustained a compensable injury by accident to her left knee. N.C. Gen. Stat. § 97-2(6). Defendant Crum and Forster is liable for this injury.
2. Plaintiff's persistent left knee pain was causally related to her compensable injury of December 30, 2002. Parsons v. Pantry, Inc.,126 N.C. App. 540 (1997).
3. When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct. Roper v. J.P. Stevens Co., 65 N.C.App. 69, 308 S.E.2d 485
(1983), disc. review denied, 310 N.C. 309, 312 S.E.2d 652 (1984) (quotingStarr v. Charlotte Paper Co., 8 N.C.App. 604, 175 S.E.2d 342,cert. denied, 277 N.C. 112 (1970)). In the present case, plaintiff has shown through the testimony of Dr. Barron that her right knee pain developed as a natural consequence of plaintiff's left knee injury and is, thus, proximately related to the December 30, 2002 work-related incident. Id. Defendant Crum and Forster is liable for this injury.
4. On July 12, 2004, Plaintiff sustained an injury by accident to her left elbow/arm when she accidentally banged it against a metal garment machine. N.C. Gen. Stat. § 97-2(6). *Page 10 
However, plaintiff has failed to show that she has sustained any disability as a consequence of this injury by accident. N.C. Gen. Stat. § 97-2(9). Thus, defendant Wausau Insurance is not liable for any indemnity compensation due plaintiff.
5. Plaintiff has failed to show that her cubital tunnel syndrome is an occupational diseased, as the evidence of record fails to show that plaintiff was placed at an increased risk of developing cubital tunnel syndrome and that there was a causal connection between her employment and the condition. Rutledge v. Tultex Corp., 308 N.C. 85, 301 S.E.2d 359
(1983).
6. Because plaintiff has been unsuccessful in finding employment, despite a reasonable job search, plaintiff is entitled to receive temporary total disability compensation from July 16, 2004, the date the plant closed, until further order of the Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to receive ongoing treatment for her compensable injuries that is reasonably necessary to effect a cure, provide relief or lessen her period of disability. N.C. Gen. Stat. § 97-25.
8. Defendant Crum and Forster is entitled to a credit for unemployment insurance benefits paid to plaintiff. N.C. Gen. Stat. § 97-42.1.
9. Defendant Crum and Forster shall reimburse defendant Wausau Insurance for any indemnity benefits, if any, paid by Wausau Insurance to plaintiff following July 16, 2004. N.C. Gen. Stat. § 97-86.1(d).
 * * * * * * * * * * * *Page 11 
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Crum and Forster shall provide to plaintiff temporary total disability compensation at the rate of $400.00 per week, beginning July 16, 2004, and continuing until further orders of the Industrial Commission, subject to the attorney's fee and credit provided herein. Compensation that has accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries for which each respective carrier is responsible, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen plaintiff's period of disability, when bills for same have been submitted and approved by the Industrial Commission.
3. Defendant Crum and Forster shall pay directly to plaintiff's attorney a reasonable attorney's fee in the amount of twenty-five (25%) of the compensation awarded to plaintiff herein. Fees based upon compensation that has accrued shall be paid to plaintiff's counsel in a lump sum; thereafter, plaintiff's counsel shall receive every fourth check of compensation due plaintiff.
4. Defendant Crum and Forster shall receive a credit for unemployment insurance benefits paid to plaintiff.
5. Defendant Crum and Forster shall reimburse defendant Wausau Insurance for any indemnity benefits, if any, paid by Wausau Insurance to plaintiff following July 16, 2004
6. Defendants shall pay the costs due the Industrial Commission.
 This 27th day of March 2007. *Page 12 
S/________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_________________ DANNY LEE McDONALD COMMISSIONER