LEONA A. ROPER, EMPLOYEE v. J. P. STEVENS & CO., EMPLOYER, AND LIBERTY MUTUAL INSURANCE CO., CARRIER, DEFENDANTS

No. 8210IC1214

(Filed 15 November 1983)

Master and Servant § 69— compensability of complications from original injuries—not properly considered

The Commission's award was not proper where it did not take into account all the complications arising from plaintiff's accidental injury in that plaintiff's award should have included compensation for the complications of phlebitis, arthritis and severe body pain which resulted from her injury. G.S. 97-2(6), G.S. 97-31, G.S. 97-29, and G.S. 97-30.

APPEAL by plaintiff from opinion and award of the North Carolina Industrial Commission filed 9 August 1982. Heard in the Court of Appeals 18 October 1983.

In this action, plaintiff seeks an award of worker's compensation for permanent and total disability, among other things, for injury arising by accident and its resultant complications. On 30 December 1977, plaintiff fell off a platform while working for defendant and broke her right hip and upper leg. As a result of this injury, plaintiff developed phlebitis and arthritis in both legs and suffered severe whole body pain. The Industrial Commission granted plaintiff an award for temporary total disability, permanent partial disability as to her right leg, medical expenses, and attorney's fees, but denied compensation for permanent and total disability. From this opinion and award, plaintiff appealed.

*Stephen T. Daniel, for plaintiff appellant.*

*Hedrick, Feerick, Eatman, Gardner and Kincheloe by Edward L. Eatman, Jr., and John H. Gardner, for defendant appellees.*

HILL, Judge.

After the evidentiary hearings, Commissioner Coy M. Vance filed an opinion and award which included the following findings of fact, in relevant part:

1. Plaintiff is a 60 year old female who had worked for defendant employer 22 years prior to December 30, 1977, the date of the injury by accident arising out of and in the course of her employment. . . .

2. On December 30, 1977, plaintiff fell from a platform she worked on and broke her hip and right leg in three places. She was admitted to Grace Hospital in Morganton, North Carolina. Pins were placed in the hip and right leg, and the right leg was shorter than the left leg after the operation.

3. As a result of the injury, plaintiff was paid temporary total disability at the rate of $104.00 per week from December 30, 1977 to April 5, 1979 for 66 weeks. . . .

4. The pain from (plaintiff's) right hip radiates up into her back. She cannot sit or stand in one position for more than 15 to 20 minutes at a time. Her job required her to stand on a platform. She must use a cane to walk and cannot sleep at night because of pain in both legs.

5. As a result of plaintiff's injury on December 30, 1977, she has developed phlebitis and post traumatic arthritis in both legs.

6. Plaintiff was readmitted to the hospital for phlebitis, inflammation and irritation of blood vessels of the involved area on August 21, 1979. . . . Plaintiff never had any problem with phlebitis prior to the injury by accident. . . .

7. Plaintiff's temporary total disability payments were discontinued on April 5, 1979 without cause or filing a Form

24 with the Commission, and shall be reinstated at the rate of $104.00 per week beginning on April 6, 1979 and continuing through October 4, 1979, plus a ten per cent penalty for late payment of the entire amount.

8. As a result of plaintiff's injury by accident, she sustained 21 per cent permanent partial disability to the right hip.

9. Plaintiff has been hospitalized on occasions since the date of the first hearing on October 4, 1979. Temporary total disability payments are due for these periods of time. The permanent partial disability payments shall be discontinued during the periods that plaintiff was temporarily, totally disabled.

10. On July 3, 1980, plaintiff was essentially totally incapacitated due to the pain in the left leg and became temporarily totally disabled on that date. Therefore, she is entitled to temporary total disability payments beginning on July 3, 1980. The permanent partial disability payment due for the right hip shall be discontinued as long as she is temporarily, totally disabled.

11. Plaintiff's treating physician, Dr. James Melton, states the prognosis for any improvement in the future is very poor. She will never have a functional right hip. Her exercise activity left will be restricted. She can never stay in one position for more than minutes or fractions of an hour at a time without severe discomfort. She will never be able to have gainful employment to any realistic degree.

Based on these findings, Commissioner Vance made conclusions of law which included the following:

3. Plaintiff suffered a change of condition and became temporarily, totally disabled for periods of time after October 4, 1979 when entering the hospital and she became permanently and totally disabled on July 3, 1980, and is entitled to temporary total disability compensation payments during this period.

Commissioner Vance then awarded compensation to plaintiff as follows:

1. Defendants shall pay and plaintiff shall accept compensation for temporary total disability from April 6, 1979 to October 4, 1979, at the rate of $104.00 per week, for 26 weeks. In addition, defendants shall pay a penalty of $2,984.40. . . .

2. Defendants shall pay plaintiff permanent partial disability payments beginning on October 5, 1979 and continuing for 42 weeks for 21 per cent permanent partial disability to the right leg. . . .

3. Plaintiff suffered a change of condition during periods of time when she was hospitalized between October 4, 1979 and July 3, 1980, and defendants shall pay plaintiff temporary total disability for these periods. Permanent partial disability payments shall be discontinued during the time that temporary total disability payments are due. . . .

4. Defendants shall pay plaintiff compensation at the rate of $104.00 per week beginning July 3, 1980 for permanent and total disability and continuing until plaintiff has a change of condition. Payment for permanent and total disability to the right leg shall be discontinued on July 2, 1980. . . .

5. Defendants shall pay all medical expenses incurred by plaintiff as a result of the injury by accident. . . . This payment shall include the treatment for phlebitis to both legs.

6. An attorney fee in the amount of $2,500.00 is hereby approved and allowed for plaintiff's counsel.

From the opinion and award of Commissioner Vance, defendants appealed to the Full Industrial Commission. On 9 August 1982, the Full Commission filed an opinion and award in which it found:

[T]hat certain findings and conclusions of Commissioner Vance are not supported by applicable law and that the Opinion and Award must be amended. It appears that plaintiff's disabilities are to her lower extremities and possibly the back which are specific disabilities covered by G.S. 97-31. . . . THEREFORE the Full Commission strikes out findings of fact #9, #10, and #11; Conclusion of Law #3; and Paragraphs #3 and #4 of the Award.

The Commission affirmed and adopted the remainder of the opinion and award.

Plaintiff contends the Commission erred in failing to adopt Commissioner Vance's opinion and award in its entirety thereby denying her compensation for permanent and total disability under G.S. 97-29. She argues the Commission failed to take into consideration the abundance of uncontradicted evidence that she is permanently and totally disabled and that this disability was the result of not only the initial impairment to her right leg but also unscheduled impairments to her whole body. We agree.

Our review of this matter "is limited to the questions of law (1) whether there was competent evidence before the Commission to support its findings of fact and (2) whether such findings justify the legal conclusions and decision of the Commission." *Smith v. American & Efird Mills*, 51 N.C. App. 480, 486, 277 S.E. 2d 83, 87 (1981), *modified and aff'd*, 305 N.C. 507, 290 S.E. 2d 634 (1982). In considering the matters raised herein, we must construe the Workmen's Compensation Act liberally so as to effectuate its human purpose of providing compensation for injured employees. *Pennington v. Flame Refractories, Inc.*, 53 N.C. App. 584, 588, 281 S.E. 2d 463, 466 (1981). The benefits of the Act should not be denied by a technical, narrow, and strict construction. *Id.*

The first issue presented by this appeal is whether plaintiff is entitled to compensation for the complications of phlebitis, arthritis and severe body pain which resulted from her injury on 30 December 1977. It is not disputed, and indeed the Commission found as a fact that the complications of phlebitis and arthritis were the result of plaintiff's compensable injury. A compensable injury is defined by G.S. 97-2(6) as being "only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

Similarly, this Court has defined the scope of a compensable injury as follows: "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct." *Starr v. Paper Co.*, 8 N.C. App. 604, 611, 175 S.E. 2d 342, 347, *cert. denied,* 277

N.C. 112 (1970) (quoting from Larson's Workmen's Compensation Law, Section 13.00). Whether plaintiff's complications are considered subsequent injuries or diseases, they are compensable under the Act as they were the natural and unavoidable result of the primary injury to plaintiff's hip and upper leg.

Further indicating that the complications are compensable is the following from 1 A. Larson, The Law of Workmen's Compensation, Section 13.11, p. 3-348, 349, 351 (1982):

> [A]ll the medical consequence and sequelae that flow from the primary injury are compensable. The cases illustrating this rule fall into two groups.
>
> The first group about which there is no legal controversy, comprises the cases in which an initial medical condition itself progresses into complications more serious than the original injury; the added complications are of course compensable. Thus, if an injury results in a phlebitis, and this in turn leads to cerebral thrombosis, the effects of the thrombosis are compensable.

We find this case to be controlled by *Little v. Food Service*, 295 N.C. 527, 246 S.E. 2d 743 (1978). In *Little*, the uncontradicted evidence tended to show the plaintiff had sustained injury to her spinal cord and as a result, she suffered a "weakness in all of her extremities, and numbness or loss of sensation throughout her body." *Id.* at 531. The Supreme Court held that an award of Workers' Compensation based on the back injury alone was improper, and that if the Commission determined that plaintiff had suffered additional impairments, "the award must take into account these and all other compensable injuries resulting from the accident." *Id.* The Court remanded for further proceedings saying: "The injured employee is entitled to an award which encompasses all injuries received in the accident." 295 N.C. at 531, 246 S.E. 2d at 746. *See also Perry v. Furniture Co.*, 296 N.C. 88, 249 S.E. 2d 397 (1978); *Holder v. Neuse Plastic Co.*, 60 N.C. App. 588, 299 S.E. 2d 301 (1983); and *Davis v. Edgecombe Metals, et al.*, 63 N.C. App. 48, 303 S.E. 2d 612 (1983).

Thus, the *Little* case dictates that the plaintiff in this action receive an award which encompasses both her initial injury and its resultant complications. The Commission's award at present is

not proper as it does not take into account all the complications of her injury. Although the Commission found as a fact that "[a]s a result of plaintiff's injury on December 30, 1977, she has developed phlebitis and post traumatic arthritis in both legs," we find no conclusion relating to such injuries.

The Commission's statement that "it appears that the plaintiff's injuries are to her lower extremities and possibly to the back which are specific disabilities covered by N.C.G.S. 97-31" indicates either that the Commission felt plaintiff's complications were included within the G.S. 97-31 award or that the Commission felt plaintiff was not entitled to compensation for such complications. Either way, the Commission was in error. Plaintiff's complications are not included in the schedule of G.S. 97-31, rather they are compensable under either G.S. 97-29 or G.S. 97-30.

Therefore, we remand this case for further proceedings in accordance with this opinion. We have considered plaintiff's remaining arguments and found them to be without merit.

Remanded.

Judges ARNOLD and BRASWELL concur.