Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence AFFIRMS in part and MODIFIES in part the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in the I.C. Form 21, Agreement for Compensation, which was approved by the Commission on September 23, 1994, in their Pre-Trial Agreement which was filed on November 5, 1996, and at the hearing before the Deputy Commissioner as
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with PCA Solutions, Inc., as the servicing agent.
3. An employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff sustained an admittedly compensable injury on August 3, 1994, in which he sustained an injury to his right eye. The plaintiff received temporary total disability compensation pursuant to the Form 21 Agreement, beginning on August 8, 1994.
5. The plaintiff's average weekly wage was $300.00, which yields a compensation rate of $200.01 per week.
6. The issue for determination is whether the plaintiff is entitled to recover additional medical benefits for treatment rendered following a reinjury to his right eye on May 21, 1995.
7. The parties stipulated twenty-six pages of medical reports, with the I.C. Form 21 into evidence at the hearing. Thereafter, the parties stipulated eight additional pages of medical records into evidence.
**********
Based upon a review of the competent evidence herein, the Full Commission modifies in part and adopts in part the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FADO
1. At the time of the hearing, the plaintiff was a thirty-seven year old ninth grade educated male, who had been employed as a roofer since entering the workforce. The plaintiff sustained a compensable injury to his right eye when it was struck by a nail on August 3, 1994.
2. Following the injury, the plaintiff was treated at ProMed in Charlotte, and was referred to ophthalmologist Dr. Walter T. Patterson, who surgically repaired the corneal laceration.
3. On November 21, 1994, the plaintiff was referred to Dr. W. Craig Fowler, an ophthalmologist at Duke University Medical Center, where he was diagnosed with significant corneal scarring and associated irregular astigmatism and traumatic-related aphakia.
4. Dr. Fowler performed a corneal transplant with vitrectomy and intraocular lens implant on March 22, 1995. By April 27, 1995, plaintiff had uncorrected vision of 20/100 in the injured eye, but Dr. Fowler still expected it to take up to one (1) year to complete the healing period. Based upon plaintiff's excellent post-operative recovery, Dr. Fowler expected the plaintiff to return to work as a roofer two weeks after surgery with a fifty pound lifting restriction, and to unrestricted duty after six weeks.
5. The plaintiff testified at the hearing that on or about May 20, 1995, he was walking in the trailer park where he lived, when he was struck in the right eye with a ball.
6. The plaintiff was seen by Dr. John Mark Brown, a board certified physician in internal medicine who specializes in emergency medicine, on May 21, 1995 at the emergency room at Duke University Medical Center. The Emergency Department Report, which was directed to the attention of Dr. Brown, noted that plaintiff had called the day before stating that he had gotten elbowed in the right eye following which he had begun to experience visual changes in the eye. Following an examination, Dr. Brown diagnosed the plaintiff with a ruptured global dehiscence of the corneal transplant of the right eye.
7. On May 22, 1995, the plaintiff underwent surgery by Dr. Dean Ouano to repair the dehisced penetrating keratoplasty and secondary intraocular lens after the lens was expulsed due to the May 20, 1995 injury. According to Dr. Fowler, the surgery was an attempt to restore the integrity of the originally "sutured in" corneal transplant which had been ruptured. This type of wound dehiscence repair is not uncommon after transplants and it does not take much to disrupt a wound after a transplant.
8. The plaintiff was seen for follow-up visits at Duke Ophthalmology, on July 20, 1995, August 14, 1995, and October 16, 1995.
9. At the time of plaintiff's May 20, 1995 reinjury, his right eye had not healed from the August 3, 1994 work related injury. Dr. Fowler opined that the plaintiff's right eye was in a weakened state on May 20, 1995, and had not completely healed from the original trauma.
10. The medical records indicate that plaintiff initially gave a history of being elbowed in the right eye. Subsequent medical records indicate that plaintiff was struck in the eye by an elbow or arm. Dr. Y. Ralph Chu, a resident at Duke University Medical Center, noted in the history that plaintiff was elbowed in the eye while playing basketball. According to Dr. Fowler, who later tried to obtain a consistent history from the doctors who treated plaintiff for the May 20, 1995 injury, Dr. Dean Ouano repeated Dr. Chu's history in his medical notes and had no independent recollection of what plaintiff had told him about the injury.
11. Plaintiff's May 20, 1995 injuries were consistent with being struck in the eye with an elbow, or arm, or ball, or any other kind of trauma to an eye that had undergone the type of surgery plaintiff had two months prior.
12. Based on the greater weight of the evidence, plaintiff was not playing basketball at the time of his reinjury on May 20, 1995.
13. Although there are two or three different versions as to how the trauma to plaintiff's eye on May 20, 1995 occurred, based on the greater weight of the evidence, the trauma was not the result of plaintiff's own intentional conduct. Therefore, the plaintiff's injury to his right eye was due to a subsequent aggravation of the primary injury and is a direct and natural consequence of his August 3, 1994 work-related injury.
14. Plaintiff is in need of future medical treatment for his right eye as he has not reached maximum medical improvement. Further, Dr. Fowler opined that the plaintiff would benefit from a repeat penetrating keratoplasty, synechialysis, as well as possible sutured-end posterior chamber intraocular lens and an automated vitrectomy.
15. Defendant's defense of this claim at the hearing before the Deputy Commissioner was not unreasonable.
********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. Heatherly v. MontgomeryComponents, Inc., 71 N.C. App. 377, 323 S.E.2d 29(1984). Unless the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable. Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485(1983). In the instant case, the plaintiff's reinjury to his right eye was not as a result of any intentional injury on his part. Therefore, it is a compensable event.
2. As a result of the compensable injury, the plaintiff is entitled to additional temporary total disability compensation for the period from May 20, 1995 until he returns to work or until further Order of the Commission. N.C. GEN. STAT. § 97-29.
3. The plaintiff is entitled to have the defendant pay for medical expenses incurred or to be incurred as a result of the compensable injury or the reinjury on May 20, 1995, as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. § 97-2(19).
4. The plaintiff has not reached maximum medical improvement; consequently, the issue of permanent partial disability shall be reserved for subsequent determination.
********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendant shall pay temporary total disability compensation to the plaintiff for the period from May 22, 1995 until the plaintiff returns to work or until further Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. As the plaintiff has not reached maximum medical improvement, this Opinion does not address this issue. However, in the event that the parties should be unable to agree on the amount of permanent partial disability compensation which may be due plaintiff, either party may request a hearing from the Commission to resolve this matter.
5. Defendant shall pay the costs due this Commission.
********
ORDER
This case was appealed to the Full Commission by defendant insurer and the Full Commission has herein affirmed the award of compensation by the Deputy Commissioner. In the discretion of the Full Commission and pursuant to N.C. Gen. Stat. § 97-88, IT IS ORDERED that defendant shall pay as a part of the costs of this appeal, the amount of $1,200.00 to plaintiff's attorney. This attorney fee is in addition to the attorney fee awarded above.
 S/ ________________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ _______________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ _______________________ LAURA K. MAVRETIC COMMISSIONER
BSB:md