Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence MODIFIES and AFFIRMS the Opinion and Award of the Deputy Commissioner as follows:
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a pretrial agreement as
STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant-employer.
3. Blythe Equipment Company is self-insured and Alexsis, Incorporated is the servicing agent in this matter.
4. An Industrial Commission Form 22 was stipulated into evidence by the parties from which an average weekly wage will be determined.
5. Plaintiff's deposition was stipulated into evidence and marked as Stipulated Exhibit Two.
6. Plaintiff's medical records were stipulated into evidence. These records consist of two pages of documentation from Mecklenburg Medical Group; two pages of medical documentation from Joseph Hunstead, M.D.; fifteen pages of medical documentation from Robert L. Fenning, M.D.; three pages of medical documentation from Mecklenburg Medical Group; thirty-six pages of medical documentation from Andrew Kirsteins, M.D.; two pages of medical documentation from Paula J. B. Stewart, M.D.; three pages of medical documentation from Steven Putnam, M.D.; and three pages of medical documentation from James E. Pugh, M.D.
7. The issues before the undersigned are: (i) whether plaintiff sustained a compensable injury by accident; (ii) whether plaintiff suffered a stroke on May 22, 1995 which was causally related to an injury by accident; and (iii) if plaintiff sustained an injury by accident and his stroke was causally related to the injury by accident, what compensation, if any, is due plaintiff.
********
EVIDENTIARY RULINGS
The objections raised in the depositions of Robert L. Fenning, M.D. and Steven F. Putnam, M.D. are OVERRULED.
********
Based upon all of the competent evidence of record, the Full Commission modifies in part and adopts in part the findings of fact of the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was sixty-one years old. Plaintiff has a third grade education and cannot read or write. Plaintiff has spent the majority of his adult life working as a welder and mechanic.
2. Plaintiff began his employment with defendant in 1969 as a welder mechanic, and except for a period of approximately one year, worked for the defendant until May 22, 1995. After the first two years with defendant, plaintiff became a full-time field mechanic. As part of plaintiff's responsibilities, he worked on heavy equipment.
3. Defendant furnished plaintiff with a truck to drive to his various work sites. Plaintiff was permitted to drive this truck home and to his various job sites. Plaintiff drove a one-ton diesel truck equipped with dual wheels, an automatic transmission, a lifting boom, tool boxes containing both tools and parts and a steel rear bumper.
4. Plaintiff normally worked beginning at 6:00 a.m. and concluding when he finished his assigned tasks. On Monday through Friday, plaintiff normally completed his work at approximately 6:00 p.m. and on Saturdays he usually completed his work around noon.
5. On Saturday, May 13, 1995, plaintiff went to work at approximately 6:00 a.m. On this date, plaintiff was responsible for covering mechanical problems at four job sites. The last job site was on Independence Boulevard where plaintiff replaced the fittings for a blade on a 613 pan. Upon completing this work, plaintiff began driving home.
6. Plaintiff's work day would have ended when he reached home and signed out on his time sheet.
7. While enroute home, plaintiff traveled from Independence Boulevard to I-77 South to South Tryon Street to Highway 49 South. As he exited I-77 to the South Tryon Street route, he brought his vehicle to a stop behind a Chevrolet Blazer that was waiting to merge from the ramp onto South Tryon Street. The Chevrolet Blazer began to move forward. Plaintiff looked over his shoulder to the left and seeing no traffic, accelerated to merge onto the street. As plaintiff turned around, he realized that the vehicle ahead of him had stopped. Plaintiff was unable to stop before striking the rear of the Chevrolet Blazer. Plaintiff was traveling at approximately 10 miles per hour at the time of the collision. Plaintiff was then struck in the rear by another vehicle which was following him. The collision caused plaintiff to lose consciousness for a short period of time. Plaintiff testified on direct that he did not know what happened after he struck the car until he saw the policeman; "I lost everything for a few seconds there." On cross examination, plaintiff further testified, "The first thing I seen was him [the officer] when I came to. It did knock me out for a minute or so — a half, maybe a few seconds. I don't know. I know it just all went blank."
8. Following the collision, plaintiff experienced some immediate pain in his neck and shoulders but indicated to the investigating officer that he did not need an ambulance. Plaintiff's wife stopped at the scene of the accident, and plaintiff told her that his neck and shoulder were hurting but he did not think he needed medical treatment. Plaintiff drove his vehicle home from the scene of the accident. Plaintiff reported the accident to his supervisor, Jerry Harris, on May 13, 1995.
9. Following the accident, plaintiff continued to experience pain and discomfort at the base of his skull and about his shoulders.
10. Plaintiff returned to work on Monday after the accident and worked the entire week at his normal job. Plaintiff continued to experience pain and discomfort in his neck and in his shoulder which became progressively worse during this time.
11. By Friday and Saturday of the week following the accident on May 13, 1995, plaintiff was feeling strange and having some difficulties. Plaintiff noticed perception problems which he described as "leaning sideways." As an example, plaintiff stated, "That's like if you said you walked straight to that door yonder, you might miss it and hit it on the left side." By Friday plaintiff became unsteady on his feet.
12. On May 22, 1995, plaintiff went to work at 6:00 a.m. and started working with the heavy equipment. He performed several small jobs that day, culminating with the changing of blades on a D-65 Komatsu. Upon completing that job, plaintiff had difficulty getting back into his truck and noticed weakness in his left leg.
13. Plaintiff drove home and upon arriving there, got out of his vehicle and sat on a chair in his yard. Plaintiff eventually entered his home and when his wife arrived she took him to the Carolinas Medical Center because he was unable to stand or walk.
14. Plaintiff was admitted to Carolinas Medical Center by Robert L. Fenning, M.D., plaintiff's family physician. Dr. Fenning diagnosed plaintiff as having suffered a stroke which left him partially paralyzed on his left side. Dr. Fenning described stroke as the end result of what happens to the brain tissue. He stated that if the brain tissue is injured by any means, it can result in stroke.
15. While in the hospital, plaintiff was seen and evaluated by Steven Putnam, M.D., a board certified neurologist.
16. Dr. Putnam in a letter dated August 28, 1995 and Dr. Fenning in a letter and during deposition testimony opined that plaintiff's automobile accident on May 13, 1995 significantly contributed to the stroke suffered by the plaintiff on May 22, 1995.
17. Dr. Fenning further opined that a sudden flexion or sudden extension of the neck in an older person with plaque-like material on the vessels of the brain and of the neck could disrupt one of those plaques or dislodge an embolus and result in a stroke.
18. According to Dr. Putnam trauma can cause or contribute to a stroke. Immediate severe trauma can directly damage and block a large artery or it can cause the artery to tear. Trauma can cause an arterial dissection which is a tear in the blood vessels resulting in blood getting into the walls of the artery and partially or totally obstructing the artery. Strokes after trauma, particularly in the vertebral arteries in the back of the brain can occur a week or two later. This scenario, according to Dr. Putnam, often would relate to a clot, thrombus or something that was dislodged and then went farther up and obstructed a vessel in the brain.
19. Dr. Fenning and Dr. Putnam further opined that as a result of the stroke, plaintiff is not capable of returning to his prior work or any other work. According to Dr. Fenning, plaintiff's condition is not likely to change.
20. Based on the greater weight of the evidence, plaintiff sustained an injury by accident arising out of and in the scope of his employment with defendant on May 13, 1995. This accident resulted in trauma to his neck resulting from a significant flexion and extension of the neck. Dr. Fenning's letter dated June 13, 1995 stated that plaintiff sustained a significant flexion contraction of the neck in the May 13, 1995 vehicular accident and that, "It is the impression of the physician involved in Mr. Moseley's care that this automobile accident on May 13th may have played a significant role in his vascular event."
21. Plaintiff's stroke is a direct and natural medical consequence flowing from his May 13, 1995 work-related injury. Consequently, plaintiff's stroke on May 22, 1995 was causally related to plaintiff's injury by accident on May 13, 1995.
22. Plaintiff has not returned to work in any capacity since May 22, 1995 and is incapable of returning to any employment.
23. Plaintiff's average weekly wage at the time of his injury by accident was $903.91 which yields a compensation rate of $602.64. Plaintiff is entitled to the maximum compensation rate of $478.00.
**************
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. Plaintiff sustained an injury by accident arising out of and in the scope of his employment with defendant-employer on May 13, 1995. N.C. Gen. Stat. § 97-2(6).
2. As a result of direct and natural medical consequences flowing from plaintiff's injury by accident, plaintiff sustained a stroke on May 22, 1995. Plaintiff's stroke is therefore causally related to his primary injury of May 13, 1995 and is compensable. Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485 (1993).
3. As a result of plaintiff's compensable injury and the resulting stroke, plaintiff is permanently and totally disabled and is therefore entitled to ongoing benefits for the remainder of his life. N.C. Gen. Stat. § 97-29.
4. As a result of plaintiff's compensable injury and causally related stroke, plaintiff is entitled to medical treatment for said injury and the resulting stroke. N.C. Gen. Stat. § 97-25.
**************
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff compensation for total disability at the rate of $478.00 per week from May 23, 1995 and continuing until further order of the Industrial Commission. Amounts which have accrued shall be paid to plaintiff in lump sum and subject to the attorney's fee approved herein.
2. Defendant shall pay all reasonable and necessary medical expenses and other treatment related to plaintiff's compensable injury for the remainder of plaintiff's life or until further order of the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph one of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty-five percent (25%) of the lump sum due plaintiff shall be deducted from that sum and paid directly to plaintiff's counsel; plaintiff's counsel shall thereafter receive every fourth compensation check from plaintiff's future compensation.
4. Defendants shall pay the costs.
 S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/ ________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ________________ LAURA K. MAVRETIC COMMISSIONER
BSB/jth