***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. The Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. All parties are properly before the Industrial Commission, all parties have been properly designated, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. This case is subject to the North Carolina Workers' Compensation Act.
3. An employment relationship existed between plaintiff and defendant-employer on March 9, 1998. NCIGA is now the carrier.
4. For the purposes of this claim, plaintiff's average weekly wage was $430.00.
5. On March 9, 1998, plaintiff sustained a compensable injury by accident arising out of and in the course of his employment.
6. This claim was accepted pursuant to a Form 60.
7. The parties stipulated into evidence the following: All Industrial Commission forms, including plaintiff's Form 18M; All medical records for plaintiff for his compensable injury.
 ***********
Based upon all of the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. As of March 9, 1998, plaintiff was 40 years old, having a birth date of January 3, 1958. Plaintiff completed the 11th grade with difficulty in reading and writing. Plaintiff did not have any vocational training and had been employed at McDonald's, a grocery store as a bagger and a stock boy, a line worker at a toaster manufacturer and mostly in hosiery mills.
2. On March 9, 1998, plaintiff was employed as a Fixer at defendant-employer's hosiery mill. On March 9, 1998, plaintiff sustained a compensable injury by accident arising out of, and in the course of his employment. On March 9, 1998, while working on one of defendant-employer's *Page 3 
machines, plaintiff's hair caught in the machine that was set too close to the machine he was fixing, which tore plaintiff's scalp off beginning with the upper eyelids across the top of his ears and around the base of his skull and wrenched plaintiff's neck and back.
3. Plaintiff was treated at Wake Forest Baptist Medical Center where he was immediately taken to the operating room. Plaintiff treated at Wake Forest Baptist Medical Center for a complete scalp avulsion and reattachment of plaintiff's ear. The scalp was brought to the emergency room separately. Plaintiff also suffered several lacerations to his neck and around both ears.
4. On March 10, 1998, Anthony Defranzo, MD, an associate professor of Plastic and Reconstructive Surgery, performed additional surgical procedures involving revascularization and split thickness skin graft to the right temporal scalp.
5. On April 17, 1998, plaintiff was discharged from Wake Forest University Baptist Medical Center.
6. Plaintiff had numerous surgical procedures from the date of accident to the present including, but not limited to, evacuation of hematomas, scalp, status post scalp avulsion and microvascular anastomosis, debridement of scalp and packing, debridement and Pulsavac irrigation of scalp, irrigation and debridement of scalp with split thickness skin grafting, removal of the Decubivac dressing and Adaptic, debridement of granulating wounds by burring of the outer layer of bone exposing four areas; split-thickness skin grafts to his forehead and scalp, cervical fusion at C4-C5, anterior cervical disectomy and cervical fusion on plaintiff at C5-C6, a C7 corpectomy with plating of C6 to T1, a lumbar microdiscectomy at L4-L5, an excision of excess skin tissue on plaintiff's left upper eyelid, tissue rearrangement of the left upper eyelid, *Page 4 
and dermabrasion of plaintiff's right scalp and a right orbital reconstruction of plaintiff's eyebrow. Plaintiff may need further eyebrow reconstruction.
7. Plaintiff does not have a stable skin cover and very minor trauma causes loss of skin. This loss of skin causes significant ulcerations of the posterior occiput, and breakdown of his skin grafts.
8. Plaintiff was treated by Crossroads Behavioral Healthcare May 7, 1998 through June 25, 1998 for post-traumatic stress disorder. On July 29, 2001, Ronald Knopf, LCSW noted plaintiff continues to suffer severely from post-traumatic stress and depression. In recent months the physical pain has been intense and he seemed under so much discomfort that plaintiff could not concentrate.
9. On December 5, 2001, plaintiff presented at Wake Forest University Baptist Medical Center with a new onset of symptoms reporting persistent neck and back pain status post previous micro-discectomy at L4-L5 and an anterior cervical discectomy and fusion at C5-7. Dr. Branch diagnosed plaintiff as having a large herniated disc at C6-7 and a recurrent large herniated disc at L4-5 to the right as a direct result of his initial injury and subsequent surgeries. On December 31, 2001, Dr. Branch performed a C7 corpectomy with plating of C6 to T1. Plaintiff had a prior bony fusion at C5-C6 level.
10. On April 19, 2002, plaintiff presented to Wake Forest University Baptist Medical Center with re-current L4-L5 herniated disc. Dr. Branch performed a lumbar bilateral discectomy for decompression, followed by a posterior lumbar interbody fusion with metal plates at L4-L5. *Page 5 
11. On June 7, 2003, Dr. Branch was of the opinion that plaintiff underwent a cervical anterior discectomy and fusion for herniated cervical discs which were directly related to plaintiff's compensable wrenching injury of his neck which occurred on March 9, 1998.
12. On June 7, 2003, Dr. Branch was of the opinion that plaintiff subsequently sustained an adjacent level cervical disc herniation that is related to plaintiff's original injury of March 9, 1998, which resulted in a fusion from C5-C7.
13. Dr. Branch is of the opinion that plaintiff is totally disabled for multiple spine injuries, chronic pain, and continuing need for scalp reconstruction. Dr. Branch has recommended pool therapy for the plaintiff to affect a cure, give relief or lesson his period of disability.
14. As a result of his compensable injury, plaintiff was treated at the Center for Pain Management in Wilmington, North Carolina from August 25, 2004 through the present for pain in his head, back, neck, hips and legs.
15. Plaintiff was treated at the Pender County Health Department of Dental Health Division on April 4, 2000; April 13, 2000; March 11, 2000; May 22, 2001; July 23, 2003; July 31, 2003; August 12, 2003; September 10, 2003; February 24, 2004; May 5, 2004; May 18, 2004; June 9, 2004; January 24, 2005; February 1, 2005; February 16, 2005 and February 22, 2005.
16. Plaintiff was given Biotene mouthwash by his dentist for the dry mouth in order to keep his mouth moist. Plaintiff used the Biotene mouthwash. Plaintiff brushed his teeth two times per day and his only consumption of sugar was juice. Plaintiff has his teeth cleaned as recommended by his dentist. *Page 6 
17. On April 20, 2004, plaintiff's teeth 1, 2, 15 and 16 were removed at Carolinas Oral and Facial Surgery Center. Plaintiff needs more teeth removed and needs crowns. Plaintiff has paid for all dental appointments.
18. Plaintiff continued to have problems with teeth dryness, and was losing teeth because of medication he has been taking. Some of the medications are Klonopin .25 mg, Cymbalta 30 mg, Popressor 25 mg, Protonix 40 mg, Seroquel 25 mg, Methadone 5 mg, Motrin 400 mg, Rozerem 8 mg, Lyrica 450 mg, Prozac, Diazepam, Oxycodone 5mg and 20mg, Neurotin 600 mg, Hydrocodone 10-325 mg, Alprazolam ER, SSD Cream 1%, Metoprolol 100 mg, Lisinopril 20 mg, Nifedipine 10 mg, Clonazepam .5 mg, Athromycin 250 mg, Gabapentin 300 mg, Lidoderm 5% patch, Thermacare heat wrap, Fluoxetine 20 mg and Amox TR-X.
19. Defendant sought the opinion of Express Dental Care of Tampa, Florida regarding the compensability of plaintiff's dental problems. A letter from Express Dental Care, dated September 6, 2005, was stipulated as part of the evidence. Express Dental Care did not interview or examine plaintiff, did consult with plaintiff's treating dentist and did not review the hearing testimony; but reached a conclusion that plaintiff's "dental problems are not compensable" based on a material review of 35 pages of documents and radiographs. Express Dental Care's note acknowledged that plaintiff was taking medications that dry out his mouth, but wrote that with proper home care, decrease in sugar intake and routine dental appointments, his caries can be avoided. The Dental Express note implicitly acknowledged that medications causing dryness of mouth can contribute to caries. The letter only addressed future, not current or past, dental problems. The letter acknowledged that her opinion is subject to modification should more information be made available to her. *Page 7 
20. Having reviewed the testimony and other evidence, the Full Commission finds plaintiff's testimony regarding his dental hygiene, his use of medications and dryness of mouth consistent with the evidence of record.
21. The Full Commission gives more weight to the opinion of plaintiff's treating dentist who treated the plaintiff on an ongoing basis beginning April 4, 2000 and continuing for sixteen (16) visits until February 22, 2005. The Full Commission finds the stipulated records of plaintiff's treating dentist as credible. Less weight should be given to Express Dental Care's opinion, as she did not evaluate plaintiff's records until seven years after the incident and never personally examined, interviewed or treated plaintiff.
22. The injuries sustained in plaintiff's accident of March 9, 1998 and the medications he received as result thereof were a significant contributing factors to plaintiff's dry mouth and that dry mouth contributed to plaintiff's dental problems and his dental restorative care and not the result of an independent intervening cause attributable to claimant's own intentional conduct.
23. On August 9, 2005, plaintiff was admitted to Oaks Psychiatric Facility for suicidal ideation, crying, and uncontrollable shaking after being assessed at the Emergency Department at New Hanover Regional Medical Center. He was discharged on August 13, 2006 with a diagnosis of depression, not otherwise specified (combination of factors including depression due to medical condition, reactive depression, substance induced mood disorder), hypertension and chronic pain syndrome. Prior to plaintiff's March 9, 1998 compensable injury, plaintiff had no prior psychiatric emotional difficulties, but now has permanent psychological impairment, as a result of plaintiff's injuries by accident out of and in the course of his employment, will never *Page 8 
return to his previous psychological state, and needs long term counseling and at least twice a month psychotherapy.
23. James T. Pawlowski, MD, an Adult and Geriatric Psychiatrist Board certified in psychiatry, has been treating plaintiff, Kirk Bray since March 29, 2005. Dr. Pawlowski treats plaintiff every one to two months. Dr. Pawlowski diagnosed plaintiff's psychiatric or emotional conditions as mixed emotions, post-traumatic stress disorder and depressive disorder. Dr. Pawlowski testified in his deposition, and the Full Commission finds as a fact, that plaintiff has adjustment disorder with mixed emotions, post-traumatic stress disorder and depressive disorder which were certainly exacerbated by his accident of March 9, 1998.
24. Dr. Pawlowski testified in his deposition that certainly from the time he started treating plaintiff in March of 2005 and for the foreseeable future, plaintiff cannot work for a number of reasons including spinal pain; neck pain; multiple spinal surgeries; continued pain despite a regimen of medications; headaches; multiple skin grafts, at least 12 grafts in ten years; pneumonia and infections and bizarre problems including a fire ant bite that led to kidney and liver failure; and depression and post-traumatic stress disorder with flashbacks, dreams, nightmares, recollections, decreased sleep, hyper-vigilance and a hot temper.
25. Plaintiff's psychiatrist referred plaintiff to Susan Roscher, a psychotherapist and licensed clinical social worker with bachelors and masters degrees in social work. Ms. Roscher has treated plaintiff more than 150 times. Ms. Roscher counseled plaintiff for major severe depression, severe chronic pain, panic attacks, suicidal ideation, headaches, anxiety, sleep disorder, lethargy, fatigue, sluggishness, impulsiveness, post-traumatic stress disorder, anger and interpersonal issues. *Page 9 
26. Ms. Roscher testified in her deposition that plaintiff's psychological conditions will prevent him from any gainful employment.
27. On August 25, 2004, The Center for Pain Management noted plaintiff had hundreds of macular papillar lesions secondary to fire ant bites. On September 4, 2004, plaintiff was admitted to New Hanover Regional Medical Center for acute renal failure secondary to fire ant bites. Plaintiff contends that because of the high levels of prescribed medications that he was taking at the time, he was unable to feel the fire ant biting him and thereafter experienced renal failure. However, there is no competent testimony or evidence proving that the plaintiff's medications in any way contributed to the fire ant bites and ultimate renal failure.
28. Plaintiff has traveled 28 miles round trip to CVS pharmacy to pick up his prescription medications since 2000, approximately three times per month.
29. Defendants have not reimbursed plaintiff for the special mattresses, pillows, pillow cases and bed linens plaintiff was required to purchase as a result of his head injury and multiple surgeries. Medicare has paid the expenses for Daniel Patterson, MD, New Hanover Medical Center from November 2001 to date, Delaney Radiologists, Southeastern Nephrology Associates, Wilmington Pathology, Wilmington Health Associates, Pender County EMS, East Carolina Emergency Physicians, Patrick Martin, MD, Topsail Family Medicine, and Cape Fear Psychiatric.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW *Page 10 
1. There is no competent testimony or evidence proving that the plaintiff's medications he received as a result of the injuries sustained in the accident of March 9, 1998 in any way contributed to the fire ant bites and ultimate renal failure.
2. The greater weight of the medical evidence establishes that the injuries sustained in plaintiff's accident of March 9, 1998 and the medications he received as result thereof were a significant contributing factors to plaintiff's dry mouth and that dry mouth contributed to plaintiff's dental problems and his dental restorative care and not the result of an independent intervening cause attributable to claimant's own intentional conduct as required by Roper v. J.P.Stevens Co., 65 N.C. App. 69, 73, 308 S.E.2d 485, 488 (1983),disc. rev. denied, 310 N.C. 309, 312 S.E.2d 652 (1984).
3. Defendants shall pay all plaintiff's medical expenses related to his compensable injury and its' compensable consequences as long as they are reasonably required to effect a cure or give relief. N.C. Gen. Stat § 97-25.
4. In the present case, the evidence of record shows that plaintiff is permanently incapable of work in any employment given the physical and psychological limitations he suffers as a result of the admittedly compensable injury of March 9, 1998. Moreover, it would be futile for plaintiff to search for employment given his physical and psychological limitations, taken with his age, work history, transferable skills, and education. Defendants have provided insufficient evidence that suitable jobs are available to plaintiff and that plaintiff is capable of obtaining a suitable job given his physical, psychological, and vocational limitations. For these reasons, plaintiff is totally and permanently disabled pursuant to N.C. Gen. Stat. § 97-29 and the case law. *Page 11 
5. Because plaintiff is found to be totally and permanently disabled, plaintiff is entitled to receive total and permanent disability compensation at the rate of $430.00 per week continuing until his death or until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendants pay for all medical treatment incurred or to be incurred by plaintiff as a result of his admittedly compensable injury of March 9, 1998. This treatment includes, but is not limited to, pool therapy and any applicable memberships or fees necessary therefore, and restorative dental care. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. The defendant shall continue to pay all reasonably necessary medical expenses incurred by plaintiff for treatment of his injuries from the accident of March 9, 1998. Defendant shall provide plaintiff with pool therapy, as recommended by Dr. Branch, for so long as that treatment tends to affect a cure, give relief or lessen his period of disability.
2. Defendants shall pay all plaintiff's unpaid medical expenses related to his compensable injury and its' compensable consequences as long as they are reasonably required to effect a cure or give relief.
3. Defendants shall reimburse plaintiff for out of pocket expenses incurred as a result of plaintiff's injury by accident on March 9, 1998.
4. Subject to the attorney's fee approved below, defendants shall pay to plaintiff total and permanent disability compensation at the rate of $430.00 per week continuing until his death. *Page 12 
5. Every fourth compensation check due plaintiff shall be paid to his attorney as a reasonable attorney's fee.
6. Defendant shall pay the costs of the hearing, pursuant to Rule 611(6) of the Workers' Compensation Rules of the Industrial Commission.
This the 26th day of November 2008.
 S/_______________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
 S/_______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________________ DIANNE C. SELLERS COMMISSIONER *Page 1