***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing parties have not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Harris and enters the following Opinion and Award:
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Commission has jurisdiction of the parties and of the subject matter. *Page 2 
2. All parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. All parties have been properly designated, and there is no question as to misjoinder or nonjoinder of parties.
4. Defendant is self-insured, and Corvel is the third-party administrator.
5. Plaintiff sustained an admittedly compensable injury to her right knee on December 27, 2007, arising out of and in the course and scope of her employment, and the same was admitted on a Form 60.
6. Plaintiff returned to work with defendant-employer on or about July 14, 2008, while on restrictions.
7. Plaintiff alleges to have sustained a compensable injury to her left knee as a natural consequence due to overcompensation for the right knee injury on or about July 17, 2008.
8. Defendant has denied the claim for the left knee injury.
9. An employment relationship existed between plaintiff and defendant-employer on December 27, 2007.
10. Plaintiff's average weekly wage in this claim is $764.68, and her compensation rate is $509.81.
11. Plaintiff filed a Form 33 Request for Hearing on November 13, 2008, citing that "Defendants have refused to provide medical treatment and have refused to reinstate indemnity benefits following a failed return to work."
12. Defendant filed a Form 33R on December 19, 2008, citing that "there was a 28U filed by the claimant claiming that she had an unsuccessful RTW due to her left knee. The left leg/knee was never a part of this reported claim, which was for the right knee." *Page 3 
13. Mediation was held and was declared at impasse on May 22, 2009.
 *********** EXHIBITS
The following documents were accepted into evidence before the Deputy Commissioner as stipulated exhibits:
 • Exhibit 1: Executed Pre-Trial Agreement
 • Exhibit 2: Industrial Commission Forms
 • Exhibit 3: Plaintiff's medical records
 • Exhibit 4: Plaintiff's statement dated 7/16/08
 • Exhibit 5: Initial report of injury dated 7/16/08
 • Exhibit 6: Claim payment register
The following documents were accepted into evidence before the Deputy Commissioner as Plaintiff's Exhibits:
 • Exhibit 1: Letter from plaintiff's counsel to Key Risk adjustor Nanci E. Lewis dated 11/5/08
 • Exhibit 2: Letter from plaintiff's counsel to defendant's counsel dated 3/27/09
A transcript of the deposition of the following was also received by the Deputy Commissioner post-hearing:
 • Dr. Lance T. Sisco (with Deposition Exhibit 1 and defendants' Exhibit 1)
 ************ EVIDENTIARY RULINGS *Page 4 
The objections raised by counsel at the deposition taken in this matter are ruled upon in accordance with the law and the opinion in this Opinion and Award.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 47 years of age, with a date of birth of September 3, 1963.
2. Plaintiff worked for defendant-employer as a licensed practical nurse. The job of a licensed practical nurse involves physical, hands-on duties. At Southern Correctional Institution, where plaintiff worked, among other duties, a licensed practical nurse would be required to climb stairs, particularly when responding to emergencies.
3. On December 27, 2007, plaintiff sustained an admittedly compensable injury to her right knee when she slipped on a wet floor and hyperextended her right knee.
4. Following her compensable right knee injury, plaintiff continued to work in a temporary light duty capacity.
5. After receiving conservative treatment for her right knee symptoms elsewhere, plaintiff presented to Dr. Sisco, an orthopedic surgeon, on January 28, 2008. Plaintiff complained of popping, locking, and giving way in her right knee. Dr. Sisco found that plaintiff walked with an antalgic gait favoring her right leg, among other findings. He diagnosed a right knee medial meniscus tear and recommended arthroscopic examination.
6. Plaintiff underwent a right knee MRI on February 11, 2008. Dr. Sisco noted that the MRI showed a cartilage defect in the weight bearing portion of the medial femoral condyle, and he continued to recommend an arthroscopy. *Page 5 
7. On February 21, 2008, plaintiff underwent right knee arthroscopic surgery with Dr. Sisco.
8. Plaintiff went out of work for her compensable right knee injury as of the surgery date, and defendant initiated payments of temporary total disability (TTD) compensation in the weekly amount of $456.61.
9. Plaintiff began physical therapy on February 25, 2008, with a chief complaint of pain and stiffness in her right knee.
10. On February 27, 2008, Dr. Sisco prescribed a wheelchair for plaintiff to use to get around in her house. Plaintiff also used crutches to ambulate.
11. Plaintiff continued with her physical therapy and home exercises for her right knee through July 15, 2008.
12. On April 16, 2008, the physical therapist noted that plaintiff complained of left knee weakness and thought that her left knee was starting to hurt more because of overcompensation for her right knee injury.
13. On June 30, 2008, plaintiff presented to Dr. Sisco's office and complained of not only continued pain in her right knee, but also pain in her left knee. She was described as "obese" in the medical record. She received a cortisone injection in her left knee.
14. As of late June 2008, plaintiff's left knee ached just as much as her right knee did.
15. Plaintiff requested and tried a light duty return to work (RTW) with defendant-employer beginning on July 14, 2008. Her restrictions at that time were no stair climbing; no standing longer than 30 minutes at a time; no stooping, bending, or crawling; and no lifting greater than 15 pounds. *Page 6 
16. On July 16, 2008, while at work, plaintiff was walking, turned, and felt a snap in her left knee. She had immediate severe pain in her left knee and could not walk. Plaintiff was performing her normal job duties at the time she injured her left knee.
17. Later that day, plaintiff went to Dr. Sisco's office, where she was assessed with a left knee medial meniscus tear versus tibial plateau fracture. She was instructed to use crutches and taken out of work again.
18. On July 28, 2008, defendant filed a Form 28T reflecting that TTD compensation had been terminated on July 14, 2008.
19. Plaintiff underwent a left knee MRI on August 4, 2008. On August 7, 2008, Dr. Sisco noted that the MRI showed mild degenerative changes mainly involving the patella, a small effusion, and a medial plica. He diagnosed osteoarthritis of the left knee and plica band and recommended an arthroscopic examination.
20. Also on August 7, 2008, Dr. Sisco took plaintiff out of work for two weeks and executed a Form 28U. The Form 28U stated in part, "left knee was compromised due to overcompensation for the right knee injury of 12/27/07."
21. Defendant did not reinstate TTD compensation to plaintiff upon receiving the Form 28U because, as they stated on their Form 33R, the Form 28U referenced a different body part (left knee) than the body part for which the claim was accepted (right knee).
22. Plaintiff underwent arthroscopic surgery on her left knee with Dr. Sisco on August 14, 2008. Dr. Sisco found chondromalacia in the joint.
23. Plaintiff began physical therapy again on August 25, 2008.
24. Plaintiff thereafter continued to have pain and weakness in both knees and continued to undergo physical therapy and treat with Dr. Sisco's office. *Page 7 
25. On October 22, 2008, Dr. Sisco's physician's assistant found plaintiff to be at maximum medical improvement (MMI) for her right knee and assigned a permanent partial impairment (PPI) rating of ten percent (10%). He also assigned permanent restrictions, with regard to the right knee, of no stair climbing; no bending, stooping or squatting; and no standing longer than 45 minutes.
26. After October 22, 2008, plaintiff remained out of work from her job with defendant-employer because defendant-employer could not accommodate plaintiff's permanent restrictions.
27. Plaintiff looked for work and found a job with the Randolph County Jail performing inmate intake. She worked that job from June 3, 2009, through June 28, 2009, when she had to stop because her knees became too painful.
28. The parties took Dr. Sisco's deposition on November 13, 2009. Following the deposition, defendant reinstated TTD compensation to plaintiff retroactive to October 22, 2008, (the date plaintiff had permanent restrictions assigned for her right knee condition) in the weekly amount of $456.58 and filed a Form 62 dated December 31, 2009, reflecting the same.
29. As of the date of hearing before the Deputy Commissioner, plaintiff was having more pain in her left knee than her right knee.
30. As Dr. Sisco confirmed, plaintiff's antalgic gait that he observed in the six months following her December 7, 2007, right knee injury put more stress on her left knee and placed her at an increased risk for left knee problems. As he further testified, he believed that plaintiff developed left knee pain following, and as a result of, her right knee injury, surgery and recovery therefrom, and the incident on July 16, 2008, aggravated her left knee condition even further. As he further testified, it was possible that plaintiff's July 16, 2008, left knee injury was completely *Page 8 
independent of the compensable right knee injury, "but the most likely scenario was that she was favoring . . . the right leg."
31. Dr. Sisco confirmed that he felt that plaintiff's left knee injury was causally related to her compensable right knee injury.
32. As Dr. Sisco further testified, plaintiff is not at maximum medical improvement for her left knee condition. As he further testified, with regard to her left knee condition, he would allow plaintiff to do activities as she can tolerate them. He would expect her to have problems with stairs, squatting, and prolonged weight-bearing.
33. The treatment that plaintiff has received with and/or at the direction of Dr. Sisco and his staff has been reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability related to her left knee condition.
34. Further medical treatment is reasonably required to effect a cure, provide relief and/or lessen the period of plaintiff's disability related to her right and left knee conditions.
35. Defendant did not engage in stubborn, unfounded litigiousness in defense of this claim.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown, by the greater weight of the evidence of record, that she sustained an overcompensation injury to her left knee as a direct and natural result of her admittedly compensable right knee injury. As such, plaintiff's left knee injury is compensable. Roper v. J.P. Stevens Co.,65 N.C. App. 69, 308 S.E.2d 485 (1983). *Page 9 
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.Harding v. Thomas Howard Co.,256 N.C. 427, 124 S.E.2d 109 (1962). Our Supreme Court has defined the term `accident' as used in the Workers' Compensation Act as "an unlooked for and untoward event which is not expected or designed by the injured employee . . . The elements of an accident are the interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences."Adams v. Burlington Indus., Inc.61 N.C. App. 258, 260, 300 S.E.2d 455, 456 (1983); Poe v. AcmeBldrs., 69 N.C. App. 147, 316 S.E.2d 338, cert. denied,311 N.C. 762, 321 S.E.2d 143 (1984). Plaintiff did not sustain a compensable injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. As plaintiff has shown that her left knee injury was a compensable consequence of her admittedly compensable right knee injury, she is entitled to retroactive reinstatement of TTD compensation from July 16, 2008, through October 21, 2008, for her failed trial return to work, as stated on the Form 28U. Rule 404A(2).
4. The Form 62 executed by defendant on December 31, 2009, remains in effect, and defendant has not contested that plaintiff is entitled to ongoing TTD compensation for her compensable right knee injury. N.C. Gen. Stat. § 97-29.
5. Defendant is entitled to an offset, against back TTD owed, for the period that plaintiff worked in the Randolph County Jail in June 2009. The amount of this offset depends on the application of the temporary partial disability compensation formula of N.C. Gen. Stat. § 97-30 *Page 10 
if Plaintiff was earning less than her average weekly wage in this claim. The offset is dollar-for-dollar if Plaintiff was earning equal to or greater than her average weekly wage.
6. Given that the parties have now stipulated to a compensation rate of $509.81, plaintiff is entitled to reimbursement of TTD underpayments made since the inception of this claim.
7. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendant provide all medical treatment, incurred or to be incurred, necessitated by the December 27, 2007, compensable right knee injury, and the compensable left knee injury, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
8. Defendant did not defend this claim without reasonable grounds. As such, plaintiff is not entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to the offset and reimbursement set out in Conclusions of Law Nos. 4 and 5 above, and subject to the attorney's fee provision below, defendant shall pay to plaintiff, in a lump sum, accrued TTD compensation for the period from July 16, 2008, through October 21, 2008, in the amount of $509.81 per week. Defendant shall continue to make weekly TTD payments to plaintiff in the amount of $509.81 until plaintiff returns to work or further Order of the Commission. *Page 11 
2. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to plaintiff in paragraph one (1) above, is hereby approved to be deducted from the lump sums accrued (after application of the offset and reimbursement) and thereafter, every fourth (4th) payment due plaintiff shall be paid directly to plaintiff's attorney.
3. Defendant shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, when bills for same have been submitted and approved by the Industrial Commission.
4. Dr. Sisco is hereby authorized as plaintiff's treating physician in this matter, and defendant shall, subject to the limitations period of N.C. Gen. Stat. § 97-25.1, authorize and pay for the treatment that he and/or his staff recommends for her compensable right and left knee conditions, including but not limited to diagnostic testing and imaging, surgery, physical therapy, prescriptions, referrals, and mileage.
5. Defendant shall pay the costs.
This the 9th day of December, 2010.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER
CONCURRING:
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
S/___________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1