***********
Upon review of the competent evidence of record, with reference to the errors assigned, and finding no good grounds to receive further evidence, or to rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner, with modifications, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into in their Pre-trial Agreement and at the hearing as: *Page 2 
 STIPULATIONS
1. The parties are properly before the North Carolina Industrial Commission. The parties are subject to and bound by the North Carolina Workers' Compensation Act. The North Carolina Industrial Commission has jurisdiction of the parties and of the subject matter of these proceedings. An employment relationship existed between the parties at all times relevant to these proceedings.
2. The parties are correctly designated and there is no question as to the mis-joinder or the non-joinder of any party.
3. Plaintiff was in a motor vehicle accident while in the course and scope of her employment on June 22, 2004.
4. Defendant admitted liability for Plaintiff's right wrist injury arising out of the June 22, 2004 work injury.
5. Plaintiff returned to suitable employment and continues to work for Defendant.
6. Plaintiff is entitled to the maximum compensation rate for the year 2004 of $688.00.
7. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit One (1) — North Carolina Industrial Commission forms and filings;
 b. Stipulated Exhibit Two (2) — Plaintiff's medical records;
 c. Stipulated Exhibit Three (3) — Accident report from the June 22, 2004 motor vehicle accident;
 d. Stipulated Exhibit Four (4) — Discovery responses; *Page 3 
 e. Stipulated Exhibit Five (5) — Plaintiff's temporary total disability compensation payment history;
 f. Stipulated Exhibit Six (6) — Ergonomic Evaluation Report dated April 28, 1999 and Duke Ergonomic Evaluation form dated September 26, 2005;
 g. Stipulated Exhibit Seven (7) — Pre-trial Agreement; and
 h. Defendant's Exhibit One (1) — Handwritten diagram.
8. The employer in this case is Duke University. Duke University is self-insured.
9. Plaintiff sustained a compensable injury on or about June 22, 2004.
 *********** ISSUES
The issues to be determined are:
1. Whether Plaintiff's medical motion should be granted so as to allow her to receive treatment needed for her right shoulder with Dr. Kevin Paul Speer?
2. Whether Plaintiff is entitled to reasonably necessary medical treatment for her right shoulder with Dr. Speer?
3. Whether Plaintiff should be reimbursed for out-of-pocket expenses related to her right shoulder treatment?
4. Whether Plaintiff's right shoulder injury is causally related to her June 22, 2004 work injury?
 ***********
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. Plaintiff is 45-years-old, with a date of birth of November 20, 1961. Plaintiff received her bachelor's degree from Boston College, her master's of business administration degree (MBA) from Duke University, and has over a 20 year work history with Defendant. Plaintiff's position with Defendant both on June 22, 2004 and at the time of the hearing before the Deputy Commissioner was Director of Finance and Personnel for Alumni Affairs.
2. On June 22, 2004, Plaintiff sustained injuries in a motor vehicle accident while in the course and scope of her employment with Defendant. Plaintiff was in the process of transporting paperwork on Defendant's campus when another vehicle struck the right, rear side of her vehicle. Plaintiff had her right arm extended forward on the steering wheel when the other vehicle made impact with her vehicle, causing her right arm to jerk forward. The next day, Plaintiff presented to Defendant's Employee Occupational Health and Wellness Clinic. The medical records from that visit note that Plaintiff sustained a "jerk to the arm" in connection with the motor vehicle accident the previous day. Thereafter, Plaintiff underwent continued medical treatment with numerous physicians at Duke University Medical Center.
3. On August 11, 2004, Plaintiff saw Dr. James Albert Nunley, II, upon referral from Dr. Alison Patricia Toth for complaints of right ankle pain. Dr. Nunley ordered an air cast with stirrup support and physical therapy for the right ankle. On September 22, 2004, Plaintiff returned to Dr. Nunley, who felt that her right ankle improved enough to discontinue use of the air cast. On October 20, 2004, Plaintiff saw Dr. Nunley again, at which time he concluded that her right ankle was going to recover completely, and that she could be discharged from his care.
4. On August 13, 2004, Dr. Alison Patricia Toth, an orthopaedist, diagnosed Plaintiff with a probable triangular fibro-cartilage complex (TFCC) injury to her right wrist. Dr. Toth *Page 5 
subsequently referred Plaintiff to Dr. David Allen Thompson, another orthopaedist. On August 23, 2004, Dr. Thompson confirmed the TFCC diagnosis and recommended that Plaintiff's right arm remain immobilized in a long arm cast. Eventually, Dr. Thompson recommended surgery. On October 22, 2004, Dr. Thompson performed an arthroscopic repair of Plaintiff's right wrist injury. Following this surgery, Dr. Thompson ordered physical therapy.
5. On November 10, 2004 and December 6, 2004, Plaintiff returned to Dr. Thompson, and he ordered continued physical therapy. On January 17, 2005, Plaintiff's physical therapist recommended an additional 8 weeks of therapy 2 times per week. On January 19, 2005, Dr. Thompson agreed with this recommendation for further physical therapy. Plaintiff continued physical therapy 2 times per week through May 6, 2005. On May 9, 2005, Dr. Thompson recommended that Plaintiff undergo a home exercise program rather than continued physical therapy. Plaintiff underwent a total of 28 weeks of physical therapy following her October 22, 2004 right wrist surgery.
6. On July 23, 2005, Dr. Thompson again saw Plaintiff and noted posterior right shoulder soreness, as well as continued complaints with the right wrist. Plaintiff eventually underwent a second surgery on her right wrist on August 29, 2005, performed by Dr. David Simms Ruch, an orthopaedist with a sub-specialty in hand surgery. Dr. Ruch recommended further physical therapy following this surgery. Plaintiff underwent an additional 10 weeks of physical therapy following the August 29, 2005 right wrist surgery.
7. Dr. Thompson testified that a typical course of physical therapy would last anywhere from 6 to 12 weeks. Plaintiff underwent a total of 38 weeks of physical therapy from October 2004 through November 2005. Plaintiff and Dr. Thompson testified, and the Full Commission finds as fact, that the physical therapy that she underwent following the October 22, *Page 6 
2004 and August 29, 2005 right wrist surgeries involved extensive use of her right upper extremity.
8. On September 13, 2005, Defendant admitted the compensability of Plaintiff's June 22, 2004 work injury via a Form 60. The Form 60 described Plaintiff's compensable injury as follows: "I was exiting the parking lot and a woman backed into me and impacted the right rear fender of car." On September 23, 2005, Plaintiff filed a Form 18 alleging injuries to her right upper extremity and hand. Defendant never filed a Form 61 denying liability with respect to Plaintiff's right upper extremity.
9. On October 4, 2005, Dr. Claude Thurman Moorman, III, another orthopaedist, saw Plaintiff for complaints of right shoulder pain. Dr. Moorman noted that "[b]ecause of alterations in her [Plaintiff's] upper extremity kinematics she has developed a secondary compensatory pain along the shoulder blade of her right shoulder" which is "markedly limiting with both her ADLs and her attempts to return to work type activities." Dr. Moorman diagnosed Plaintiff with a snapping scapular syndrome in the right upper extremity, ordered more physical therapy, and administered cortico-steroid injections to her right shoulder. Defendant paid for both the October 4, 2005 visit with Dr. Moorman and his treatment recommendations.
10. On March 21, 2006, Plaintiff saw Dr. Louis Cornelis Almekinders, another orthopaedist, due to continued right shoulder complaints. Dr. Almekinders noted that Plaintiff had a sudden onset of intermittent pain in the right, posterior shoulder approximately 3 months ago "when she started some rehab for other injuries. These injuries resulted from a MVA in 2004. The shoulder symptoms are aggravated by lifting weight." Dr. Almekinders further noted that Plaintiff's shoulder complaints did not improve with conservative care, and diagnosed her with bursitis and an impingement syndrome. *Page 7 
11. On September 20, 2006, Plaintiff presented to Dr. Kevin Paul Speer, an orthopaedist with a sub-specialty in shoulder surgeries. In Dr. Speer's history, he noted that Plaintiff's right shoulder pain began the previous year while recovering from a motor vehicle accident in which she injured her right wrist and underwent treatment in a long arm cast, followed by 2 right wrist surgeries. Further, Dr. Speer noted that "[a]t some point during her [Plaintiff's] early convalescence in the cast, her shoulder scapula pain, ache and discomfort became more apparent," and that she now "complains of rather significant constant unremitting pain in her scapula." Dr. Speer diagnosed Plaintiff with refractive scapulo-thoracic bursitis of the right shoulder that is crepitant, which means that interfering adhesions and scarring are in the bursal space. Because Dr. Speer felt that Plaintiff already exhausted all other conservative options, he recommended an open superomedial angle scapula ostectomy with bursectomy procedure. Based upon Dr. Speer's examination of Plaintiff, he concluded that Plaintiff's "scapula pain is the direct consequence of her MVA" of June 22, 2004.
12. Dr. Speer testified that he reviewed Plaintiff's medical records prior to his September 20, 2006 visit with her. The medical records that Dr. Speer reviewed were the same as those contained in Stipulated Exhibit Two (2). Based upon Dr. Speer's review of Plaintiff's medical records, and his physical examination of her, he was of the opinion and the Full Commission finds as fact that the June 22, 2004 work injury which caused her right wrist injury also caused her right shoulder complaints. Dr. Speer further opined, to a reasonable degree of medical certainty, and the Full Commission finds as fact, that the treatment that Plaintiff underwent for her right wrist injury caused her right shoulder condition. Dr. Speer opined, and the Full Commission finds as fact, that repetitive strain injuries and excessive stress injuries can cause the right shoulder condition that he diagnosed, and that the long arm casting that Plaintiff *Page 8 
underwent from June 2004 through May 2005, along with the lengthy course of physical therapy that Plaintiff underwent, put an excessive strain on her right shoulder joint. This excessive strain caused Plaintiff's scapula to irritate the bursa, giving rise to her refractive scapulo-thoracic bursitis of the right shoulder.
13. Plaintiff continues to suffer from pain and other symptoms in her right shoulder when she performs both household and work duties. Because none of the conservative treatment measures were successful in relieving Plaintiff's right shoulder pain and other symptoms, Dr. Speer is of the opinion that the "right open superomedial angle scapular ostectomy and bursectomy" procedure is her best option for obtaining relief to her right shoulder. In addition to providing relief to Plaintiff's right shoulder pain and other symptoms, Dr. Speer explained that this procedure involves removing the crepitant bursa in order to prevent other problems such as scarring. The Full Commission gives great weight to the opinion testimony of Dr. Speer.
14. Dr. Nunley and Dr. Thompson both testified that overuse of an upper extremity such as the shoulder could be a cause of scapulo-thoracic bursitis. Neither Dr. Nunley nor Dr. Thompson evaluated or treated Plaintiff for her right shoulder condition, and neither of them reviewed Plaintiff's entire medical record prior to offering their opinions. With respect to causation, Dr. Nunley opined that either Plaintiff's underlying scoliosis or the unrelated trauma she reported to her elbow following the June 22, 2004 work injury was more likely the cause of her refractive scapulo-thoracic bursitis of the right shoulder. Dr. Thompson opined that it was unlikely that the June 22, 2004 work injury was the direct cause of Plaintiff's refractive scapulo-thoracic bursitis of the right shoulder; however, the fact that Plaintiff performed her work duties differently because of the work injury would be a more likely cause. The Full Commission gives *Page 9 
greater weight to the opinion testimony of Dr. Speer over any contrary opinions of Dr. Nunley and Dr. Thompson.
15. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's refractive scapulo-thoracic bursitis of the right shoulder was a direct and natural consequence of her June 22, 2004 work injury and is compensable.
16. Subsequent to Plaintiff's September 20, 2006 visit with Dr. Speer, she filed a Motion to Compel Medical Treatment, pursuant to N.C. Gen. Stat. § 97-25. Plaintiff's Motion sought authorization from Defendant for an evaluation with Dr. Speer. On November 6, 2006, Special Deputy Commissioner Meredith R. Henderson filed an Administrative Order denying Plaintiff's Motion.
17. The Full Commission finds, based upon the greater weight of the evidence, that the examination and treatment rendered by Dr. Speer and his recommendation that Plaintiff undergo the superomedial angle scapula ostectomy with bursectomy procedure were, and continue to be reasonably required in order to effect a cure, to give relief, and/or to lessen her period of disability related to her compensable injury. Dr. Speer is authorized to provide treatment to Plaintiff for her right shoulder condition.
18. Plaintiff testified, and the Full Commission finds as fact, that Defendant did not authorize or pay for her March 21, 2006 visit with Dr. Almekinders. Defendant also did not authorize or pay for her September 20, 2006 visit with Dr. Speer. The Full Commission finds, based upon the greater weight of the evidence that Plaintiff is entitled to have Defendant reimburse her for any out-of-pocket expenses she incurred that are related to her June 22, 2004 work injury, including, but not limited to treatment rendered by Dr. Almekinders and Dr. Speer, and any other reasonably required treatment for her compensable right shoulder injury. *Page 10 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course and scope of her employment with Defendant on June 22, 2004. N.C. Gen. Stat. § 97-2(6) (2008).
2. Plaintiff returned to suitable employment and continues to work for Defendant.
3. In Starr v. Paper Co., the North Carolina Court of Appeals held that "`[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment. . . .'" Starr v. Paper Co.,8 N.C. App. 604,611, 175 S.E.2d 342, 347, cert. denied, 277 N.C. 112 (1970),quoting, Larson's Workmen's Compensation Law, § 13.00. Relying upon the rule set forth in Starr, the Court of Appeals later held in Roper v.J.P. Stevens Co. that the complications of phlebitis, arthritis, and severe body pain suffered by the plaintiff in that case from her original compensable injury were also compensable, regardless of whether they were "subsequent injuries or diseases . . . as they were the natural and unavoidable result of the primary injury to plaintiff's hip and upper leg." Roper v. J.P. Stevens Co., 65 N.C. App. 69, 74,308 S.E.2d 485, 488 (1983), cert. denied, 310 N.C. 309, 312 S.E.2d 652
(1984).
4. In the case at bar, the greater weight of the evidence, including the expert testimony of Dr. Kevin Paul Speer, establishes that the long arm casting that Plaintiff underwent following her admittedly compensable June 22, 2004 work injury, along with the overuse of her right shoulder during the physical therapy she underwent following her October 22, 2004 and *Page 11 
August 29, 2005 right wrist surgeries, put an excessive strain on her right shoulder joint, thereby causing her to develop refractive scapulo-thoracic bursitis of the right shoulder. The development of Plaintiff's refractive scapulo-thoracic bursitis of the right shoulder was a direct and natural consequence of her June 22, 2004 work injury and is, therefore, compensable. Roper, 65 N.C. App. 69, 308 S.E.2d 485
(1983), cert. denied, 310 N.C. 309, 312 S.E.2d 652 (1984);Starr, 8 N.C. App. 604, 175 S.E.2d 342, cert. denied, 277 N.C. 112
(1970).
5. Plaintiff established that the examination and treatment rendered by Dr. Speer, as well as his recommendation that Plaintiff undergo the superomedial angle scapula ostectomy with bursectomy procedure, were reasonably required in order to effect a cure, to give relief, and/or to lessen her period of disability. Defendant is responsible for payment for such treatment. Dr. Speer is authorized to provide treatment to Plaintiff for her right shoulder condition. N.C. Gen. Stat. §§ 97-19,97-25 (2008).
6. Plaintiff is entitled to have Defendant reimburse her for any out-of-pocket expenses she incurred that are related to her June 22, 2004 work injury, including, but not limited to treatment rendered by Dr. Louis Cornelis Almekinders and Dr. Speer, and any other reasonably required treatment for her compensable injury.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Dr. Kevin Paul Speer is authorized to be Plaintiff's treating physician.
2. Defendant shall pay for medical expenses incurred or to be incurred as a result of Plaintiff's June 22, 2004 work injury to her right wrist and shoulder, for so long as such *Page 12 
evaluations, examinations, and treatments may reasonably be required in order to effect a cure, to give relief, and/or to lessen her period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act. Defendant shall authorize all evaluations, examinations, and treatments provided and recommended by Dr. Kevin Paul Speer, Plaintiff's authorized treating physician with respect to her right shoulder complaints, that may reasonably be required in order to effect a cure, to give relief, and/or to lessen her period of disability, resulting from her June 22, 2004 work injury.
3. Defendant shall pay the costs of these proceedings.
This the ___ day of April 2009.
S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ DANNY LEE McDONALD COMMISSIONER
DISSENTING:
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 13