***********
Upon review of the competent evidence of record, with reference to the errors assigned, and considering the briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission reverses the Opinion and Award of the Deputy Commissioner, and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all times relevant to these proceedings. *Page 2 
2. On February 28, 2008, Plaintiff sustained an admittedly compensable work injury.
3. On February 28, 2008, an employment relationship existed between the parties.
4. On February 28, 2008, Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer.
5. Plaintiff's average weekly wage is $789.04, yielding a compensation rate of $526.05.
6. The parties stipulated to the following documents being admitted into evidence as stipulated exhibits:
 a. Stipulated Exhibit A: Plaintiff's medical records;
 b. Stipulated Exhibit B: North Carolina Industrial Commission forms and filings;
 c. Stipulated Exhibit C: Employee-Plaintiff's Responses to Defendants' First Set of Interrogatories;
 d. Stipulated Exhibit D: Defendants' Responses to Plaintiff's Discovery;
 e. Stipulated Exhibit E: Pre-Trial Agreement.
 *********** ISSUE
The issue to be determined is whether Plaintiff's alleged right ulnar nerve injury is compensable, and if so, to what workers' compensation benefits is he entitled?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT *Page 3 
1. Plaintiff is 39 years old, with a date of birth of March 19, 1971. Plaintiff has a high school diploma, is certified by the State of North Carolina as a paramedic and had other specialized search and rescue training. From 1994 through 1995, Plaintiff worked as an emergency medical technician/firefighter. Since 1996, Plaintiff has been working as a paramedic. Plaintiff began working for Defendant-Employer as a paramedic in 2005.
2. On February 28, 2008 Plaintiff was working for Defendant-Employer as a paramedic when he injured his right upper extremity while assisting in the moving of a very obese patient from a bed to a stretcher. The patient was in severe respiratory distress and lying in an awkward position on a bed in a small bedroom. The patient needed to be transported to the hospital immediately, but there was not enough space in the bedroom to position all of the personnel needed to transfer the patient from the bed to the stretcher. Plaintiff positioned himself behind the patient. During the transfer, the patient slipped back onto Plaintiff requiring him to push the patient up and over a second time to maneuver the patient onto the stretcher, while "humped over with an upward position." As Plaintiff was en route to the hospital just minutes after removing the patient from the bed, the trauma shears he was using fell out of his right hand due to numbness in his hand and fingers. After Plaintiff reached the hospital, he noticed swelling and redness in his right biceps area and a "weird feeling in my [right] hand." Plaintiff sought treatment in the emergency department after completing his transport duties with the patient, where he received a diagnosis of acute biceps strain and a prescription for a sling to immobilize his right arm.
3. On February 29, 2008 Plaintiff presented to Dr. Daniel Thomas Davis, an orthopaedist, with complaints of right shoulder pain extending downward into the arm. A physical examination revealed tenderness over the right biceps tendon. Dr. Davis diagnosed *Page 4 
Plaintiff with a possible partial right biceps tendon tear and recommended right shoulder magnetic resonance imaging (MRI). Plaintiff remained out of work for the next three to five days and then returned in a light-duty capacity.
4. On March 18, 2008 Plaintiff presented to Dr. Patrick Robert L. Hayes, an orthopaedist, with complaints of right shoulder pain radiating to the mid-humerus and occasional numbness and tingling in his right fingers. Dr. Hayes diagnosed Plaintiff with right shoulder impingement with bursitis and mild capsular tightness. Dr. Hayes administered a steroid injection, prescribed pain medication, ordered physical therapy and continued Plaintiff's light-duty work restrictions.
5. On April 29, 2008 Plaintiff returned to Dr. Hayes, at which time he reported no improvement in his symptoms. An MRI revealed tendonopathy over the distal infra-spinatus and supra-spinatus tendons, with the possibility of a linear splint in the conjoined tendon and a delamination injury. Dr. Hayes diagnosed persistent impingement with bursitis and the possibility of a partial or full-thickness rotator cuff tear and recommended surgery.
6. On May 16, 2008 Plaintiff underwent right shoulder surgery performed by Dr. Hayes. Plaintiff's post-operative diagnosis was right shoulder impingement with bursitis and Type II superior labral tear. Dr. Hayes prescribed narcotic pain medication and total immobilization of Plaintiff's right shoulder.
7. For the next 15 days following Plaintiff's May 16, 2008 right shoulder surgery, he wore a pillow sling which bent his right arm at a 90 degree angle, 24 hours per day. Afterwards, Dr. Hayes ordered physical therapy and directed Plaintiff to wear a standard sling 18 to 24 hours per day. The standard sling bent his right arm at a 90 degree angle either parallel with his sternum, or higher up near his shoulder. On June 16, 2008 Dr. Hayes released Plaintiff to return *Page 5 
to work in a light-duty capacity. On July 15, 2008 Dr. Hayes discontinued Plaintiff's use of the standard sling.
8. According to Plaintiff, he experienced numbness and tingling primarily in his right ring and little fingers and somewhat in his arm throughout his post-operative recovery. Physical therapy records from June 4, 2008, June 19, 2008, September 24, 2008, and September 26, 2008 document that Plaintiff complained of continued numbness and tingling in his right arm and fourth and fifth fingers. However, Dr. Hayes did not document any complaints of numbness and tingling in Plaintiff's right arm and fingers during this same time period. The Full Commission gives great weight to the physical therapy records and to Plaintiff's testimony concerning his continuing numbness and tingling in his right ring and little fingers throughout his post-operative recovery.
9. On August 20, 2008 Defendants accepted the compensability of Plaintiff's February 28, 2008 work injury via a Form 60, which indicates that the nature of the work injury was "[r]otator cuff tear to right shoulder." Also on August 20, 2008 Defendants executed a Form 62 documenting that Plaintiff began receiving temporary total disability compensation on May 16, 2008 and a Form 28T indicating that on June 15, 2008 Plaintiff resumed work at the same or greater wages as his pre-injury wage.
10. On September 23, 2008 Plaintiff presented to Dr. Hayes again with continued complaints of pain, stiffness, and weakness in his right shoulder. Plaintiff also expressed concerns about whether he was healing properly post-operatively. Dr. Hayes ordered a right shoulder MRI arthrogram and continued Plaintiff's physical therapy and light-duty work restrictions. *Page 6 
11. On October 7, 2008 Plaintiff returned to Dr. Hayes with complaints of neck and right arm pain radiating past the elbow, as well as right upper extremity numbness and tingling. A cervical MRI revealed a mid-level cervical disc bulge with compression of the spinal cord, and a right shoulder MRI arthrogram revealed an intact superior labral tear repair and a partial intra-substance tear of the posterior supra-spinatus tendon, but no evidence of a full-thickness tear. Dr. Hayes referred Plaintiff to a neck specialist to determine the cause of his neck pain and possible radiculopathy, and continued his right shoulder strengthening for another month before determining whether he was at maximum medical improvement or required further treatment.
12. On October 21, 2008 Plaintiff presented to Dr. Theodore Andrew Belanger, an orthopaedist in Dr. Hayes' practice group, for evaluation of his neck complaints. Dr. Belanger was of the opinion that Plaintiff's complaints of numbness and tingling in the fourth and fifth fingers of his right hand and in the ulnar side of the palm of his hand were more consistent with peripheral neuropathy such as ulnar nerve entrapment at the elbow, especially since he could not reproduce any of his symptoms down his arms with any positions of his neck. Dr. Belanger concluded that Plaintiff's clinical presentation was not consistent with cervical radiculopathy, and that "statistically numbness in the ulnar side of the hand is related to peripheral nerve entrapment at the elbow most commonly and could secondarily be related to shoulder pathology but would be extraordinarily unlikely to be related to the cervical spine." Because Dr. Belanger felt that Plaintiff's symptoms pointed more toward ulnar neuropathy rather than cervical radiculopathy, he recommended no further treatment from a cervical spine perspective.
13. On November 18, 2008 Plaintiff returned to Dr. Hayes with continued complaints of right shoulder pain and weakness, and numbness and tingling of the right fourth and fifth fingers. Dr. Hayes did not feel that the partial tear of the supra-spinatus tendon found on the *Page 7 
MRI arthrogram required surgery. Instead, Dr. Hayes ordered a functional capacity evaluation to determine what Plaintiff's physical capabilities were at that point.
14. On January 8, 2009 Plaintiff underwent a functional capacity evaluation. The results of the functional capacity evaluation revealed that Plaintiff was capable of working in a medium-duty capacity which allowed for lifting up to 50 pounds occasionally. Plaintiff's duties as a paramedic required him to lift in excess of 50 pounds on a frequent basis.
15. On January 19, 2009 Plaintiff presented to Dr. Scott Michael McCloskey, a neurosurgeon, for evaluation of his continued complaints of right hand/finger numbness and tingling. Dr. McCloskey noted that Plaintiff had tingling discomfort on the ulnar aspect of the right arm and hand and some discomfort on the right side of the neck, all of which developed shortly after his February 28, 2008 work injury. A physical examination revealed a positive Tinel's sign overlying the ulnar nerve at the right ulnar groove. The area of intermittent numbness described by Plaintiff corresponded to the right ulnar nerve dermatome. Dr. McCloskey diagnosed possible right elbow ulnar nerve entrapment, possible brachial plexus strain, and cervical disc disease at the C4-C5 level of the spine. Dr. McCloskey recommended nerve conduction studies to determine whether Plaintiff required surgery to decompress the ulnar nerve, but he did not recommend further treatment of the cervical complaints.
16. On May 13, 2009 Plaintiff returned to Dr. McCloskey, at which time he complained of almost constant numbness in the little finger and that sometimes the ring finger would be involved. A physical examination revealed a positive Tinel's sign over the ulnar nerve at the right ulnar groove and over the median nerve at the right carpal tunnel, along with numbness in the right hand accompanied by some pain about the right shoulder with the Phalen's maneuver and precipitation of numbness in the fourth and fifth fingers upon flexion of the elbow *Page 8 
in a position that would stress the ulnar nerve. Dr. McCloskey interpreted the nerve conduction studies as revealing a false-negative with respect to the ulnar nerve, but as being positive for carpal tunnel syndrome when correlated with Plaintiff's clinical presentation. Dr. McCloskey concluded that Plaintiff sustained "a general stress injury to the right-upper extremity . . . [with] ulnar nerve entrapment at the right elbow and some degree of median nerve entrapment at the carpal tunnel," with the worst problem being related to the ulnar nerve. As a result, Dr. McCloskey recommended right ulnar nerve decompression surgery, possibly followed by carpal tunnel release surgery.
17. On June 29, 2009 Plaintiff returned to Dr. Hayes for treatment. Dr. Hayes noted that Plaintiff complained of numbness and tingling in his right upper extremity, and "actually complained of these symptoms, according to my notes, in the fall following his injury and surgery." Dr. Hayes further noted that Plaintiff was required to use an arm sling after surgery, that prolonged elbow flexion can lead to ulnar neuritis, and that being in the arm sling following surgery could have contributed to Plaintiff's ulnar neuritis type symptoms. Dr. Hayes also noted that Plaintiff's electrical studies confirmed carpal tunnel syndrome and ulnar neuropathy at the cubital tunnel and that his symptoms of tingling and numbness could be related to post-surgical positioning. With respect to future treatment of Plaintiff's right shoulder, Dr. Hayes suggested the possibility of future surgery to address his continued shoulder complaints, but ultimately recommended against this. Dr. Hayes assigned Plaintiff a seven percent permanent partial disability rating to Plaintiff's right upper extremity, but noted that he might obtain additional ratings to the right upper extremity due to the peripheral nerve deficits. Dr. Hayes was of the opinion that Plaintiff could work, as symptoms allowed, at medium-duty. *Page 9 
18. During his deposition testimony, however, Dr. Hayes described Plaintiff's complaints of right upper extremity numbness and tingling as episodic, based upon the lack of consistent documentation of these complaints in his office notes, which suggested to him that the complaints were "transiently exacerbated by positioning," and more related to Plaintiff's underlying biology, rather than swelling related to surgery. Dr. Hayes also opined that Plaintiff's "ulnar neuritis was probably not caused by the day of injury on February 28th, but it probably did result or at least was contributed to by the post-operative positioning and care." Further, Dr. Hayes felt it was not unreasonable to have some irritation of the ulnar nerve following a shoulder surgery if the elbow must be kept bent, and if there is some swelling following surgery. Dr. Hayes deferred to Dr. McCloskey's expertise and experience concerning the diagnosis and treatment of Plaintiff's complaints of right upper extremity numbness and tingling.
19. Based primarily on Plaintiff's clinical presentation and Dr. McCloskey's own clinical and surgical experience, he diagnosed Plaintiff as having right ulnar nerve entrapment and carpal tunnel syndrome. Dr. McCloskey opined that the nerve studies Plaintiff underwent can render false-negative readings between 20 and 30 percent of the time when utilized as a diagnostic tool for peripheral neuropathies. Dr. McCloskey was of the opinion that, because Plaintiff's clinical findings were so strongly supportive of a diagnosis of right ulnar nerve entrapment, including the correlation of his symptoms with the right ulnar nerve dermatome, and the fact that he had such a major injury to the right upper extremity, the clinical presentation outweighed the negative findings of the nerve testing.
20. Dr. McCloskey agreed with Dr. Hayes that "the vulnerability of the ulnar nerve after shoulder surgery where you have to keep it in that fixed position for such a period of time" could have been the cause of Plaintiff's right upper extremity numbness and tingling. However, *Page 10 
Dr. McCloskey was also of the opinion that it was "equally likely that this ulnar stress or the stress of the ulnar nerve could have come about at the time of the injury as well." Although the main focus after the injury was to Plaintiff's shoulder where there was major soft tissue disruption, Dr. McCloskey did not think that the injury was only to that isolated part of the right upper extremity. He felt the whole upper extremity was stressed to some degree and the ulnar nerve was part of that.
21. Ultimately, Dr. McCloskey opined that the likely source of Plaintiff's right upper extremity numbness and tingling was due to an ulnar nerve entrapment caused by either the original injury, or by the immobilization of the shoulder required to aid recovery after surgery. In either circumstance, Dr. McCloskey's opinions relate Plaintiff's right upper extremity numbness and tingling to the February 28, 2008 work injury, either as a direct and natural consequence of the work injury, or a direct cause of the injury.
22. With respect to Plaintiff's carpal tunnel syndrome, Dr. McCloskey opined that the likely cause of this condition "goes back to the original injury where the right upper extremity was stressed so severely, severely enough to cause the shoulder injury that's requiring the surgery." Dr. McCloskey continued to recommend that Plaintiff undergo a right ulnar nerve decompression surgery, possibly followed by a carpal tunnel release surgery, depending upon the relief he obtained from the decompression surgery.
23. The Full Commission gives greater weight to the opinion testimony of Dr. McCloskey over any contrary opinions of Dr. Hayes and finds as fact that Plaintiff has ulnar nerve entrapment and carpal tunnel syndrome, which are causally related to his February 28, 2008 injury, either directly or as a direct and natural consequence. Plaintiff's testimony concerning his continuing right upper extremity complaints is found to be credible. *Page 11 
24. The Full Commission further finds that Plaintiff is not at maximum medical improvement.
25. The medical treatment Plaintiff received from Dr. Hayes and Dr. McCloskey with respect to his February 28, 2008 work injury was reasonably required to either effect a cure, give relief, and/or lessen his period of disability from his work injury. The Full Commission further finds that Dr. McCloskey should be designated as Plaintiff's authorized treating physician.
26. Plaintiff's entitlement to further disability beyond what is currently being paid, if any, shall be addressed at a subsequent hearing as this issue requires an evidentiary hearing. A separate Order has been issued to address this matter.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 28, 2008, Plaintiff sustained a compensable injury by accident arising out of and in the course of his employment with Defendant-Employer to his right upper extremity. N.C. Gen. Stat. § 97-2(6) (2009).
2. As a result of Plaintiff's February 28, 2008 work injury, he developed ulnar nerve entrapment of his right upper extremity which was either caused by the injury, or was a direct and natural consequence of the immobilization of his right upper extremity as part of the prescribed treatment after surgery. As a result of Plaintiff's February 28, 2008 work injury, he also developed carpal tunnel syndrome, which is causally related to the injury to his right upper extremity. Plaintiff proved that his right ulnar nerve entrapment and right carpal tunnel syndrome are compensable injuries. N.C. Gen. Stat. § 97-2(6) (2009); Holley v. ACTS,Inc., 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003); *Page 12 Young v. Hickory Business Furniture,353 N.C. 227, 538 S.E.2d 912 (2000); Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
3. The greater weight of the competent evidence establishes that Plaintiff's need for medical treatment for symptoms and conditions related to his right ulnar nerve entrapment and right carpal tunnel syndrome are causally related to his admittedly compensable February 28, 2008 work injury to his right upper extremity. Defendants failed to rebut Plaintiff's Perez
presumption. Perez v. American Airlines/AMR Corp.,174 N.C. App. 128, 620 S.E.2d 288 (2005).
4. Plaintiff is not at maximum medical improvement with respect to his February 28, 2008 work injury.
5. The medical treatment Plaintiff received for conditions related to his February 28, 2008 work injury, was reasonably necessary to effect a cure, to give relief, and/or to lessen his period of disability. Plaintiff is entitled to future medical treatment for his compensable injuries. Defendants are obligated to pay the expenses for medical treatment incurred or to be incurred by Plaintiff which is reasonably related to his compensable injury. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1 (2009).
6. Dr. Scott Michael McCloskey is hereby designated as Plaintiff's authorized treating physician. N.C. Gen. Stat. § 97-25 (2009).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD *Page 13 
1. Defendants shall pay all medical expenses incurred or to be incurred as a result of Plaintiff's February 28, 2008 work injury, including his symptoms and conditions related to right upper extremity ulnar nerve entrapment and his carpal tunnel syndrome, for so long as such evaluations, examinations, and treatments may reasonably be required to effect a cure, to give relief, and/or to lessen his period of disability, in accordance with the provisions of the North Carolina Workers' Compensation Act.
2. It is ordered that Dr. Scott Michael McCloskey shall become Plaintiff's authorized treating physician.
3. Defendants shall pay the costs of these proceedings.
4. Plaintiff's disability status shall be determined through an evidentiary hearing.
This the ___ day of December 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 14 
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER