***********
Upon review of the competent evidence of record, including the additional evidence presented after remand, with reference to the errors assigned, and considering the briefs, supplemental briefs and oral arguments of the parties, the Full Commission finds no good grounds to receive further evidence, or to rehear the parties or their representatives. Upon *Page 2 
consideration of all of the evidence, the Full Commission enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into at the hearing as:
 STIPULATIONS
1. The alleged dates of injury are April 19, 2002 and January 8, 2003. On April 19, 2002, Plaintiff sustained an injury to his back while moving lawn mowers and a 10 gallon can of gasoline. On January 8, 2003, Plaintiff sustained a re-injury/aggravation of his existing back condition. Defendants accepted the compensability of these claims
2. As of April 19, 2002 and January 8, 2003, an employment relationship existed between the parties.
3. As of April 19, 2002 and January 8, 2003, Defendant-Carrier provided workers' compensation insurance coverage to Defendant-Employer.
4. The North Carolina Industrial Commission previously heard this matter, and the parties settled all previous issues between them, including average weekly wage (other than those listed below as issues to be determined).
 *********** ISSUES
1. Whether Plaintiff's gastrointestinal complaints, including diarrhea, are causally related to his April 19, 2002 and January 8, 2003 work injuries?
2. Whether Plaintiff is entitled to any further workers' compensation benefits?
3. Whether Plaintiff continues to be disabled? *Page 3 
4. Whether the July 10, 2009 Full Commission Order remanding this case to a Deputy Commissioner for additional evidence limits the issues of the parties in this matter?
5. Whether Plaintiff's September 2008 Motion regarding what information may be submitted on the issues related to vocational rehabilitation/available suitable employment limits the issues he may now litigate?
 ***********
Based upon the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff is 39 years old, with a date of birth of February 5, 1972. Plaintiff worked for Defendant-Employer as a sales associate/check-out clerk. Plaintiff also worked part-time for Western Carolina University as a security guard.
2. As found in the June 5, 2007 Full Commission Opinion and Award, on April 19, 2002, Plaintiff was working for Defendant-Employer as a check-out clerk when he sustained a specific traumatic incident to his lower back while moving lawn mowers and a 10-gallon can of gasoline. Plaintiff came under the care of Dr. Eric Loren Rhoton a neurosurgeon. Dr. Rhoton diagnosed him with a central disc protrusion at the L5-S1 level of the spine which mildly impinged on the ventral thecal sac. Plaintiff filed a workers' compensation claim for his April 19, 2002 work injury under North Carolina Industrial Commission File Number 239411. On May 5, 2002, Defendants accepted the compensability of Plaintiff's April 19, 2002 work injury via a Form 60. Thereafter, Defendants authorized Plaintiff to undergo a microdiscectomy performed by Dr. Rhoton at the L5-S1 level of the spine on April 24, 2002. *Page 4 
3. As further found in the June 3, 2007 Full Commission Opinion and Award, on January 8, 2003, Plaintiff suffered an admittedly compensable re-injury/aggravation of his lower back condition when he bent over to pick up change he dropped on the floor while working at the cash register. As a result of Plaintiff's January 8, 2003 work injury, he developed a new onset of right lower extremity radicular pain. Plaintiff had a small recurrent disc protrusion and epidural scarring at the L5-S1 level of the spine resulting in the need for surgery. Plaintiff filed a new workers' compensation claim under Industrial Commission File Number 266663. Subsequently, Plaintiff suffered a re-herniation of his disc requiring a discectomy and fusion surgery on December 4, 2004. Defendants denied liability for this re-herniation, but did not appeal from the Deputy Commissioner's finding of liability. The prior Full Commission Opinion and Award found Plaintiff had voluntarily resigned from his job, but awarded temporary total disability compensation to Plaintiff from the date of his surgery on December 20, 2004 through May 26, 2005, the date Dr. Rhoton released him to return to work. The Full Commission reserved for subsequent determination the issue of Plaintiff's disability after May 26, 2005.
4. On July 20, 2007, Plaintiff filed a Form 33 seeking temporary total disability compensation from May 25, 2005 to the present and continuing and medical treatment and compensation relating to an L4-L5 disc bulge. Plaintiff's request for a hearing is the subject of this claim.
5. Following his release to return to work on May 25, 2005, Plaintiff continued to treat with Dr. Rhoton. According to Plaintiff, he was unable to work due to ongoing low back pain and gastrointestinal problems. On August 30, 2005, Dr. Rhoton wrote a note indicating Plaintiff was "unable to obtain employment" and that Plaintiff was seeking food stamps to assist *Page 5 
him while he remains out of work. Dr. Rhoton did not indicate Plaintiff was incapable of working.
6. On April 6, 2006, Plaintiff returned to Dr. Rhoton, at which time he complained of a different type of low back pain on the left side and in the sacral area which occurred when he got up from a chair. Magnetic resonance imaging (MRI) revealed a slight mid-line disc protrusion at the L4-L5 level of the spine indenting the thecal sac, but not appearing to be in a position to cause any significant nerve root impingement. Although these findings represented an interval change from a prior 2003 MRI, Dr. Rhoton did not recommend surgery at that time.
7. Throughout 2006 and 2007, Plaintiff presented to emergency departments at various local hospitals on numerous occasions for continued low back pain, reflex sympathetic dystrophy of the left foot, and various gastrointestinal complaints. Plaintiff contends he sought treatment from these various hospitals because he was unable to obtain treatment for the pain related to his April 19, 2002 and January 8, 2003 work injuries from Defendants. At these emergency department visits, Plaintiff received varying types and doses of narcotic pain medication.
8. In November 2007, Defendants authorized a one-time visit for Plaintiff with ProMed Asheville in Asheville, North Carolina to determine whether he needed a referral to Dr. Rhoton. Since Plaintiff had almost a two-year gap in treatment, Dr. Rhoton's office required a referral in order for Plaintiff to be given an appointment. In January 2008, Plaintiff attended the appointment at Pro-Med Asheville and received a referral to Dr. Margaret Ober Burke, a pain management specialist and partner in the same practice group as Dr. Rhoton.
9. On January 8, 2008, Plaintiff presented to Dr. Burke, who noted that he suffered from chronic pain syndrome with a recent flare-up of low back and leg pain. Dr. Burke ordered *Page 6 
a lumbar MRI to rule out any new pathology. On March 26, 2008, Plaintiff returned to Dr. Burke to review the MRI results. Dr. Burke noted that the MRI revealed a mid-line to left protrusion at the L4-L5 level of the spine which possibly touched the L5 nerve root. Dr. Burke recommended epidural steroid injections and physical therapy. Although Plaintiff was to return to Dr. Burke, he did not because Defendants did not authorize her treatment recommendations.
10. According to Plaintiff, his ongoing low back pain, gastrointestinal problems and diarrhea, prevented him from being able to work after May 26, 2005. Additionally, Plaintiff is of the opinion that the 80 milligrams of morphine that he takes per day makes him too drowsy to work.
11. Plaintiff testified that he attempted to find work through the Employment Security Commission of North Carolina Job Link, newspapers and computer searches, but was unable to locate employment that fits within his physical restrictions. Plaintiff did not present the names of any specific employers to which he applied, or any documentation of his employment search, including written printouts of the jobs he identified, or copies of any written employment applications that he completed in an attempt to secure suitable employment. Moreover, Plaintiff testified that he did not attempt to search for suitable employment after July 2009. Plaintiff has not proven that he made reasonable efforts to find suitable employment or that searching for suitable employment would be futile.
12. Dr. Rhoton opined that having a fusion at the L5-S1 level of the spine could have predisposed Plaintiff to a disc herniation at the L4-L5 level of the spine, but he could not state to a reasonable degree of medical certainty that the disc herniation at the L4-L5 level is the natural result of Plaintiff's fusion at the L5-S1 level. Dr. Rhoton further opined that he could not state that the disc protrusion at the L4-L5 level of the spine was more likely than not caused by the *Page 7 
fusion at the L5-S1 level of the spine. As of the last time Dr. Rhoton examined Plaintiff on April 16, 2006, he was of the opinion that he could still work within the physical restrictions of no lifting over 10 pounds.
13. Dr. Rhoton had no recollection of Plaintiff ever having a problem tolerating narcotic pain medications due to sedation or decreased mental function. He did not recall Plaintiff ever complaining to him that any of the medications he prescribed made him too sleepy to work. Dr. Rhoton did not prescribe morphine to Plaintiff. The Full Commission gives great weight to the opinion testimony of Dr. Rhoton.
14. Dr. Burke testified that she had a difficult time obtaining an accurate physical examination of Plaintiff because he showed significant pain behavior and symptom magnification. Dr. Burke recalled that Plaintiff informed her that he quit his job in 2006 and that he spent most of his time in bed. Dr. Burke was of the opinion that such a sedentary lifestyle would worsen an individual's physical condition, and that if Plaintiff chose to be more active rather than quitting his job and spending most of his time in bed, he would be able to work.
15. Dr. Burke opined that the disc degeneration at L4-L5 level of the spine is a natural result of Plaintiff's original April 19, 2002 work injury. However, Dr. Burke did not believe that Plaintiff's disc degeneration at the L4-L5 level of the spine was the source of his pain or the reason that he cannot work. Rather, Dr. Burke was of the opinion that Plaintiff's pain is a result of his muscle weakness due to inflexibility and inactivity. Dr. Burke further opined that even if Plaintiff was unable to receive narcotic medication after his fusion surgery, this would not contribute to his physical deterioration, as one would not expect a person to require narcotic medication more than a few months after a fusion. *Page 8 
16. Dr. William Thompson Sither, an emergency medicine specialist, testified at his deposition that he treated Plaintiff on multiple occasions in the emergency department of Haywood Regional Medical Center in Clyde, North Carolina. Dr. Sither recalled that there was a general consensus among the emergency room physicians at Haywood Regional Medical Center that Plaintiff should not be given narcotic medication. Dr. Sither had no recollection of ever taking Plaintiff out of work or of assigning him physical restrictions. Dr. Sither was of the opinion that there was a psychological overlay to Plaintiff's numerous visits to the emergency department, and that Plaintiff seemed to have "one problem after another," including mistakenly putting Nair on his face instead of shaving cream.
17. Dr. Benedetto Anthony Iacovelli, an emergency medicine specialist, testified that he also treated Plaintiff on multiple occasions for a variety of different complaints in the emergency department of Haywood Regional Medical Center. Dr. Iacovelli was of the opinion that there was a psychiatric component to Plaintiff's multiple visits to the emergency department, and that whether it be drug-seeking behavior or a psychiatric problem, narcotic medication was feeding into Plaintiff's "cycle." Dr. Iacovelli did not recall ever issuing Plaintiff an out-of-work note and further opined that he never examined or treated him for a condition that would have prevented him from working on an ongoing basis.
18. Dr. Edmond Joseph Welsh, a family medicine and emergency medicine specialist, testified at his deposition that he also treated Plaintiff on multiple occasions for a variety of different complaints in the emergency department of Haywood Regional Medical Center. Dr. Welsh was unable to state that Plaintiff had a medical condition that would prevent him from working. Dr. Welsh explained that in his practice, if a patient has a condition that necessitates restricted activity, he will provide a note to that effect. *Page 9 
19. Ms. Melanie Marshall, a vocational rehabilitation counselor, performed a labor market survey in order to identify employment available in Plaintiff's geographic area that fit within his physical restrictions of no lifting over 10 pounds. According to Ms. Marshall, she identified at least four jobs that fit within Plaintiff's physical restrictions. In Ms. Marshall's experience, when an employer requires a prospective employee to pass a drug screen, the employer is referring to the use of illegal drugs, and employers often hire individuals who are taking legally prescribed narcotic medication. There was no indication in any of the positions identified in the labor market survey that the employer would not hire an individual who was taking legally prescribed narcotic medication. Ms. Marshall further explained that in her experience, if there is something that would be prohibitive for a prospective employee to qualify for a certain job, the employer most often specifically notes such a condition in the listing. However, there was no such notation regarding the use of legally prescribed narcotic medication for any of the positions identified in the labor market survey. The Full Commission gives great weight to the testimony of Ms. Marshall.
20. Dr. Barbara Dubiel, an internal medicine specialist, examined Plaintiff in connection with his Social Security disability application. Based upon Dr. Dubiel's evaluation of Plaintiff, including a physical examination of him, review of medical records, and taking a history from him, she was of the opinion that his only disabling symptoms were his lower back pain and "possibly" his diarrhea. While Plaintiff reported chronic abdominal pain, Dr. Dubiel's physical examination of him did not reveal evidence of abdominal pain. Dr. Dubiel further opined that physically, Plaintiff did not need to ambulate on a crutch.
21. Dr. Filiberto Colon, II, a gastroenterologist, began treating Plaintiff for gastrointestinal complaints, including vomiting and diarrhea, in May 2004. Dr. Colon diagnosed *Page 10 
Plaintiff with gastroenteritis or a gastrointestinal motility disorder, either of which "could be" related to medications or previous surgery, but were often idiopathic. According to Dr. Colon, medications were less likely to be the cause of Plaintiff's gastrointestinal complaints because abdominal pain from narcotics involves constipation in approximately 90 percent of cases; however, Plaintiff had abdominal pain involving diarrhea, which was the opposite problem. As of Dr. Colon's last examination of Plaintiff on July 12, 2005, he was of the opinion that Plaintiff had chronic abdominal pain presumably secondary to irritable bowel syndrome and diarrhea, also probably related to irritable bowel syndrome. The Full Commission gives great weight to the opinion testimony of Dr. Colon.
22. Defendants retained Dr. Robert J. Barth, a neuropsychologist, to evaluate whether Plaintiff's gastrointestinal complaints could be attributed to the medications prescribed to him for his lower back pain. Dr. Barth did not examine Plaintiff, but rather reviewed medical records and issued a written report. According to Dr. Barth, Plaintiff suffers from somatoform disorder, which is a mental illness manifested in physical complaints that do not have general medical explanations. Dr. Barth was also of the opinion that Plaintiff's pain medications did not cause his gastrointestinal complaints, as narcotic medications typically involve complaints of constipation, whereas Plaintiff had the opposite problem of diarrhea.
23. Dr. Joshua Emil Bernstein, an internal medicine specialist, began treating Plaintiff for his chronic low back pain in October 2005. According to Dr. Bernstein, the causes of irritable bowel syndrome are typically unknown, and diarrhea from narcotic medication use was unlikely to cause Plaintiff's symptoms, and was lower on his list of differential diagnoses. Dr. Bernstein did not think that narcotics caused Plaintiff's sphincter of Oddi problem or any of his *Page 11 
other gastrointestinal complaints. The Full Commission gives great weight to the opinion testimony of Dr. Bernstein.
24. Dr. William Robert Harlan, III, a gastroenterologist, treated Plaintiff as early as 2001 for his gastrointestinal complaints, including rectal bleeding, diarrhea, and possible inflammatory bowel disease. Dr. Harlan diagnosed Plaintiff with diarrhea and abdominal discomfort related to irritable bowel syndrome and bleeding due to an anal fissure. Dr. Harlan was of the opinion that Plaintiff's sphincter of Oddi problem caused his abdominal pain, and that the sphincter of Oddi problem was due to a history of recurrent pancreatitis and gallbladder removal. Dr. Harlan did not think that Plaintiff's gastrointestinal complaints were the result of his use of narcotic medication. The Full Commission gives great weight to the opinion testimony of Dr. Harlan.
25. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff's April 19, 2002 and January 8, 2003 work injuries either caused, materially aggravated, or accelerated his disc protrusion at the L4-L5 level of the spine.
26. The Full Commission finds, based upon the greater weight of the evidence, that Plaintiff failed to meet his burden to prove that his use of narcotic medications as a result of his April 19, 2002 and January 8, 2003 work injuries either, caused, materially aggravated, or accelerated any of his gastrointestinal complaints, including his diarrhea.
27. The medical treatment Plaintiff received with respect to his April 19, 2002 and January 8, 2003 work injuries, including his causally related disc protrusion at the L4-L5 level of the spine, was medically necessary in order to effect a cure, to give relief, and/or to lessen his period of disability, and Defendants are obligated to pay for such treatment. Plaintiff is in substantial need of future medical treatment for these conditions. *Page 12 
28. The Full Commission finds, based upon the greater weight of the evidence, Plaintiff failed to prove that he remains disabled from any employment as a result of his April 19, 2002 and January 8, 2003 work injuries after May 26, 2005. Specifically, Plaintiff failed to prove any of the following: (1) that he is medically disabled from any employment; (2) that he made reasonable efforts to search for suitable employment; (3) that it would be futile for him to search for suitable employment; or (4) that he obtained employment at a wage less than his pre-injury wage at any employment after May 26, 2005.
29. The Full Commission finds that the July 10, 2009 Full Commission Order did not limit the issues the parties could present in this matter.
30. Plaintiff has not received a permanent partial impairment rating for his back after his December 2004 fusion surgery. The Full Commission is unable to determine the extent of Plaintiff's permanent partial disability without a current rating, which should also consider his disc protrusion at the L4-L5 level of the spine.
31. Plaintiff's claim for temporary total disability compensation after May 25, 2005 is not barred by the doctrine of resjudicata, as this matter was specifically reserved in the prior Full Commission Opinion and Award. The other issues raised have not been previously litigated.
32. Defendants have not shown good grounds for an award of attorney fees under N.C. Gen. Stat. § 97-88.1. Plaintiff's prosecution of this claim was reasonable. Plaintiff's entitlement, if any, to additional temporary disability compensation was an issue that was specifically left open in the prior Full Commission Opinion and Award. Also, Plaintiff's Motion dated September 4, 2008, proffering additional evidence was reasonable.
 *********** *Page 13 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff's April 19, 2002 and January 8, 2003 work injuries either caused, materially aggravated, or accelerated his disc protrusion at the L4-L5 level of the spine. Roper v. J.P.Stevens Co., 65 N.C. App. 69, 308 S.E.2d 485 (1983).
2. Plaintiff failed to meet his burden of proving that his use of narcotic medications as a result of his April 19, 2002 and January 8, 2003 work injuries either caused, materially aggravated, or accelerated any of his gastrointestinal complaints, including his diarrhea. Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003).
3. Plaintiff is entitled to compensation for the permanent partial impairment he sustained to his back as a result of his compensable injuries. Defendants shall pay for Plaintiff to receive an evaluation and rating of his back for conditions related to his compensable injuries. N.C. Gen. Stat. §§ 97-25, 97-31.
4. Defendants are obligated to pay for all medical expenses incurred or to be incurred as a result of Plaintiff's compensable injuries for so long as such treatment and evaluations may reasonably be required to effect a cure, provide relief or lessen the period of his disability. This obligation includes approval and payment for medical treatment of Plaintiff's current back condition associated with the L4-L5 disc protrusion. Plaintiff is entitled to future medical treatment for his compensable conditions. N.C. Gen. Stat. §§ 97-2(19), 97-25, 97-25.1.
5. Plaintiff's claims are not barred by the doctrine of resjudicata.
6. Plaintiff failed to prove that he remains disabled from any employment as a result of his April 19, 2002 and January 8, 2003 work injuries after May 26, 2005 through production *Page 14 
of evidence sufficient to establish either of the following: (1) that he is medically disabled from any employment; (2) that he made reasonable efforts to search for suitable employment; (3) that it would be futile for him to search for suitable employment; or (4) that he obtained employment at a wage less than his pre-injury wage at any employment after May 26, 2005. Russell v. Lowes Production Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993).
7. Plaintiff is entitled to permanent partial disability compensation at the rate of $180.09 per week in accord with the rating to his back as ordered herein.
8. Since the Full Commission has found that Plaintiff's prosecution of this claim was reasonable, Defendants are not entitled to attorney fees under N.C. Gen. Stat. § 97-88.1 for the reasons stated above.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to Plaintiff permanent partial disability compensation at the rate of $180.09 per week based upon the impairment rating to his back resulting from his compensable injuries.
2. Defendants shall pay all medical expenses incurred or to be incurred in the future by Plaintiff as a result of his compensable injuries, for so long as such treatment is reasonably required to either effect a cure, provide relief or lessen the period of disability, according to procedures.
3. Plaintiff's claim for temporary total disability compensation after May 26, 2005 is hereby denied. *Page 15 
4. IT IS ORDERED that the parties shall confer, agree on a physician to evaluate and rate Plaintiff for his compensable back condition and schedule the evaluation within 35 days from receipt of this order. Defendants shall submit the rating to the Full Commission for entry of an award, or submit the proper form agreement. If the parties can not agree upon the rating, either party may file appropriate motions directed to Bernadine S. Ballance, Commissioner.
5. Defendants shall pay the costs of these proceedings.
This the __ day of June 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1